## WELCH *v.* HENRY ET AL.

No. 13.   Argued October 13, 1938.—Decided November 21, 1938.

136

*Mr. John M. Campbell* for appellant.

138

140

*Messrs. Leo E. Vaudreuil,* Deputy Attorney General of Wisconsin, and *Harold H. Persons,* Assistant Attorney General, with whom *Messrs. Orland S. Loomis,* Attorney General, and *Joseph E. Messerschmidt,* Assistant Attorney General, were on the brief, for appellees.

MR. JUSTICE STONE delivered the opinion of the Court.

This appeal presents the question whether the Act of the Wisconsin Legislature of March 27, 1935, which imposed a tax on corporate dividends received by appellant in 1933 at rates different from those applicable in that year to other types of income and without deductions which were allowed in computing the tax on other income, infringes the equal protection and due process clauses of the Fourteenth Amendment.

The statute of Wisconsin in force in 1933 and since imposes a tax on net income at graduated rates. Wisconsin Stat. 1933, c. 71. Appellant, a resident of Wisconsin, received in 1933 gross income of $13,383.26, of which $12,156.10 was dividends received from corporations whose "principal business" was "attributable to Wisconsin" within the meaning of the taxing statute. By § 71.04 (4), Wisconsin Stat. 1933,[1] such dividends were deductible from gross income in computing net taxable income, together with other items, including taxes, interest paid, business expenses, losses from the sale of securities, and donations, aggregating, in the case of appellant, $11,-161.97, so that he had no taxable net income for the year 1933.

Petitioner's income tax return was due and filed March 15, 1934. A year later c. 15 of the Laws of Wisconsin for 1935, effective March 27, 1935, laid new taxes for the years 1933 and 1934 upon various taxable subjects. Sec-

---

[1] Sec. 71.04(4) permits the deduction from gross income of dividends received from corporations whose principal business is attributable to Wisconsin; ". . . any corporation shall be considered as having its principal business attributable to Wisconsin if fifty per cent or more of the entire net income or loss of such corporation . . . (for the year preceding the payment of such dividends) was used in computing the average taxable income provided by chapter 71. . . ."

tion 6, with which we are alone concerned, imposed a graduated tax, with no deduction except the sum of $750, on all dividends received in 1933 which, when received, were deductible from gross income under § 71.04(4). The statute declared that the levy was an emergency tax to provide revenue for relief purposes and directed that the proceeds should be paid into the state treasury to be used for "unemployment relief purposes." Appellant paid the tax, amounting to $545.71, under protest, on May 13, 1935, and brought the present suit to compel its restitution as exacted in violation of the state constitution and the equal protection and due process clauses of the Fourteenth Amendment. From the judgment of the Supreme Court of Wisconsin sustaining the tax, 226 Wis. 595; 277 N. W. 183, the case comes here on appeal. § 237 of the Judicial Code, 28 U. S. C. § 344.

*First.* Appellant assails the statute as a denial of equal protection because the dividends which it selected for taxation as a special class were subjected ratably to a tax burden different from that borne by other types of income for the same year by reason of the fact that the dividends were taxed at a different rate from that applied to other income and were given the benefit of but a single deduction of $750, while recipients of other types of income in that year were permitted to deduct specified items of interest, taxes, business losses and donations. It is not contended that the receipt of dividends from corporations is not subject to tax, or that apart from the retroactive application of the tax they could not be included in gross income for the purpose of arriving at net taxable income, but it is insisted that disparities in the tax burdens which may result from the different rates and deductions infringe the constitutional immunity.

Wisconsin income tax legislation has from the beginning treated dividends received from corporations deriv-

ing a substantial part of their income from business carried on within the State, on which the corporations have paid a tax to the State, as a distinct class of income for tax purposes. At first complete tax immunity was granted to them. § 1, c. 658, Laws of Wisconsin, 1911. Later the immunity was allowed ratably in the same proportion that the income of the corporation had been subjected to state income tax. § 1, c. 318, Laws of Wisconsin, 1923. And, finally, by amendment adopted in 1927 [2] and in force in 1933 complete immunity of dividends from income tax was allowed if 50% or more of the total net income of the corporation paying them was included in the computation of the Wisconsin tax on corporate income.[3]

When in 1935 the State was confronted with the necessity of raising revenue to meet the demand for unemployment relief, and of distributing the cost among its taxpayers, the legislature found one class of untaxed income, dividends received from a specified category of corporations. It also could have concluded that a substantial part of this income had borne no tax burden at its source in the earnings of the corporations, since, by § 71.02 (3) (d), corporations are not required to pay a tax on that part of their income allocable to business carried on or property located without the State.

We think that the selection of such income for taxation at rates and with deductions not shown to be unrelated to an equitable distribution of the tax burden is not a denial of the equal protection commanded by the Fourteenth Amendment. It cannot be doubted that the receipt of dividends from a corporation is an event which may constitutionally be taxed either with or without deductions, *Lynch* v. *Hornby*, 247 U. S. 339; see *Helvering* v. *Inde-*

[2] c. 539, § 4, Laws of Wisconsin of 1927.
[3] See Note 1, *supra*.

*pendent Life Ins. Co.*, 292 U. S. 371, 381, even though the corporate income which is their source has also been taxed. See *Tennessee* v. *Whitworth,* 117 U. S. 129, 136; *Klein* v. *Board of Tax Supervisors,* 282 U. S. 19, 23; *Colgate* v. *Harvey,* 296 U. S. 404, 420. The fact that the dividends of corporations which have to some extent borne the burden of state taxation constitute a distinct class for purposes of tax exemption, *Colgate* v. *Harvey, supra;* compare *Travellers' Insurance Co.* v. *Connecticut,* 185 U. S. 364, 367; *Kidd* v. *Alabama,* 188 U. S. 730; *Darnell* v. *Indiana,* 226 U. S. 390, 398, and that in consequence such dividends have borne no tax burden, is equally a basis for their selection for taxation. *Watson* v. *State Comptroller,* 254 U. S. 122, 124, 125; *Klein* v. *Board of Tax Supervisors, supra.* Any classification of taxation is permissible which has reasonable relation to a legitimate end of governmental action. Taxation is but the means by which government distributes the burdens of its cost among those who enjoy its benefits. And the distribution of a tax burden by placing it in part on a special class which by reason of the taxing policy of the State has escaped all tax during the taxable period is not a denial of equal protection. See *Watson* v. *Comptroller, supra,* 125. Nor is the tax any more a denial of equal protection because retroactive. If the 1933 dividends differed sufficiently from other classes of income to admit of the taxation, in that year, of one without the other, lapse of time did not remove that difference so as to compel equality of treatment when the income was taxed at a later date. Selection then of the dividends for the new taxation can hardly be thought to be hostile or invidious when the basis of selection is the fact that the taxed income is of the class which has borne no tax burden. The equal protection clause does not preclude the legislature from changing its mind in making an otherwise permissible choice of subjects of taxation. The very fact that

the dividends were relieved of tax, when the need for revenue was less, is basis for the legislative judgment that they should bear some of the added burden when the need is greater.

Numerous retroactive revisions of the federal and Wisconsin revenue laws, presently to be discussed, have imposed taxes on subjects previously untaxed and shifted the burden of old taxes by changes in rates, exemptions and deductions. It has never been thought that such changes involve a denial of equal protection if the new taxes could have been included in the earlier act when adopted. If some retroactive alteration in the scheme of a tax act is permissible, as is conceded, it seems plain that validity, so far as equal protection is concerned, must be determined, as in the case of any other tax, by ascertaining whether the thing taxed falls within a distinct class which may rationally be treated differently from other classes. If such changes are forbidden in the name of equal protection, legislatures in laying new taxes would be left powerless to rectify to any extent a previous distribution of tax burdens which experience had shown to be inequitable, even though constitutional.

The bare fact that the present tax is imposed at different rates and with different deductions from those applied to other types of income does not establish unconstitutionality. It is a commonplace that the equal protection clause does not require a State to maintain rigid rules of equal taxation, to resort to close distinctions, or to maintain a precise scientific uniformity. Possible differences in tax burdens, not shown to be substantial, or which are based on discrimination not shown to be arbitrary or capricious, do not fall within the constitutional prohibition. *Lawrence* v. *State Tax Comm'n*, 286 U. S. 276, 284, 285, and cases cited.

Just what the differences are in the tax burdens cast upon the two types of income by the divergence in rates

and deductions applied to them does not appear. The burden placed on dividends by the taxing act might have been greater if they had been included in gross income and taxed on the same basis as other income since, in that case, the resulting increase in net income would be taxed at the rates applicable to the higher brackets. When the challenged statute was enacted there were available to the legislature the returns for the taxable year showing the different classes of income, the application to them of the existing law, and the effect of existing rates and deductions. There were also data to be derived from the corporation tax returns showing what part of the exempted dividends had their source in corporate income which had been taxed to the corporation and what part was attributable to corporate income not similarly taxed. The legislature was free to take into account all these factors in prescribing rates and deductions to be applied to the newly taxed dividends so as to arrive at an equitable distribution of the added tax burden. In the absence of any facts tending to show that the taxing act, in its purpose or effect, is a hostile or oppressive discrimination against the recipients of dividends who have been hitherto fortunate enough to escape all taxation we cannot say the taxing statute denies equal protection.

*Second.* The objection chiefly urged to the taxing statute is that it is a denial of due process of law because in 1935 it imposed a tax on income received in 1933. But a tax is not necessarily unconstitutional because retroactive. *Milliken* v. *United States,* 283 U. S. 15, 21; and cases cited. Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens.

Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process, and to challenge the present tax it is not enough to point out that the taxable event, the receipt of income, antedated the statute.

In the cases in which this Court has held invalid the taxation of gifts made and completely vested before the enactment of the taxing statute, decision was rested on the ground that the nature or amount of the tax could not reasonably have been anticipated by the taxpayer at the time of the particular voluntary act which the statute later made the taxable event. *Nichols* v. *Coolidge,* 274 U. S. 531, 542; *Untermeyer* v. *Anderson,* 276 U. S. 440, 445 (citing *Blodgett* v. *Holden,* 275 U. S. 142, 147); *Coolidge* v. *Long,* 282 U. S. 582. Since, in each of these cases, the donor might freely have chosen to give or not to give, the taxation, after the choice was made, of a gift which he might well have refrained from making had he anticipated the tax, was thought to be so arbitrary and oppressive as to be a denial of due process. But there are other forms of taxation whose retroactive imposition cannot be said to be similarly offensive, because their incidence is not on the voluntary act of the taxpayer. And even a retroactive gift tax has been held valid where the donor was forewarned by the statute books of the possibility of such a levy, *Milliken* v. *United States, supra.* In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation.

Property taxes and benefit assessments of real estate, retroactively applied, are not open to the objection successfully urged in the gift cases. See *Wagner* v. *Baltimore,* 239 U. S. 207; *Seattle* v. *Kelleher,* 195 U. S. 351;

148

compare *Citizens National Bank* v. *Kentucky,* 217 U. S. 443, 454; *Billings* v. *United States,* 232 U. S. 261, 282. Similarly, a tax on the receipt of income is not comparable to a gift tax. We can not assume that stockholders would refuse to receive corporate dividends even if they knew that their receipt would later be subjected to a new tax or to the increase of an old one. The objection to the present tax is of a different character and is addressed only to the particular inconvenience of the taxpayer in · being called upon, after the customary time for levy and payment of the tax has passed, to bear a governmental burden of which it is said he had no warning and which he did not anticipate.

Assuming that a tax may attempt to reach events so far in the past as to render that objection valid, we think that no such case is presented here. For more than seventy-five years it has been the familiar legislative practice of Congress in the enactment of revenue laws to tax retroactively income or profits received during the year of the session in which the taxing statute is enacted, and in some instances during the year of the preceding session. See *Untermeyer* v. *Anderson, supra,* footnote 1. These statutes not only increased the tax burden by laying new taxes and increasing the rates of old ones or both, but they redistributed retroactively the tax burdens imposed by preëxisting laws. This was notably the case with the "Revenue Act of 1918," enacted February 24, 1919, 40 Stat. 1057, and made applicable to the calendar year 1918, which cut down exemptions and deductions, increased, in varying degrees, income, excess profits and capital stock taxes,. altered the basis of surtaxes, and increased in progressive ratio the rates applicable to the higher brackets. Similarly the special munition manufacturer's tax, imposed on profits derived from sales of munitions, Act of September 8, 1916, c. 463, 39 Stat. 756, 780, was applied to the twelve months ending December 31,

1916. Cf. *Carbon Steel Co.* v. *Lewellyn,* 251 U. S. 501; *United States* v. *Anderson,* 269 U. S. 422, 435. The contention that the retroactive application of the Revenue Acts is a denial of the due process guaranteed by the Fifth Amendment has been uniformly rejected. *Stockdale* v. *Insurance Companies,* 20 Wall. 323, 331; *Railroad Co.* v. *Rose,* 95 U. S. 78, 80; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Billings* v. *United States,* 232 U. S. 261, 282; *Brushaber* v. *Union Pacific R. Co.,* 240 U. S. 1, 20; *Lynch* v. *Hornby,* 247 U. S. 339, 343; *LaBelle Iron Works* v. *United States,* 256 U. S. 377. The like practice of the legislature of Wisconsin has been approved by its courts.[4]

The equitable distribution of the costs of government through the medium of an income tax is a delicate and difficult task. In its performance experience has shown the importance of reasonable opportunity for the legislative body, in the revision of tax laws, to distribute increased costs of government among its taxpayers in the light of present need for revenue and with knowledge of the sources and amounts of the various classes of taxable income during the taxable period preceding revision. Without that opportunity accommodation of the legislative purpose to the need may be seriously obstructed if not defeated. We cannot say that the due process which the Constitution exacts denies that opportunity to legislatures; that it withholds from them, more than in the case of a prospective tax, authority to distribute the increased tax burden in the light of experience and in conformity with accepted notions of the requirements of equal protection; or that in view of well established

---

[4] *Income Tax Cases* (1912), 148 Wis. 456, 514; 134 N. W. 673; 135 N. W. 164; *State ex rel. Globe Tubes Co.* v. *Lyons* (1924), 183 Wis. 107, 124; 197 N. W. 578; *Cliffs Chemical Co.* v. *Wisconsin Tax Comm'n* (1927), 193 Wis. 295, 302; 214 N. W. 447; *West* v. *Tax Comm'n* (1932), 207 Wis. 557, 562; 242 N. W. 165; *Van Dyke* v. *Tax Comm'n* (1935), 217 Wis. 528; 295 N. W. 700.

legislative practice, both state and national, taxpayers can justly assert surprise or complain of arbitrary action in the retroactive apportionment of tax burdens to income at the first opportunity after knowledge of the nature and amount of the income is available. And we think that the "recent transactions" to which this Court has declared a tax law may be retroactively applied, *Cooper* v. *United States,* 280 U. S. 409, 411, must be taken to include the receipt of income during the year of the legislative session preceding that of its enactment.

The Joint Resolution of Congress of July 4, 1864, No. 77, 13 Stat. 417, imposed an additional tax on incomes earned during the calendar year 1863, this tax being imposed after the taxes for the year had been paid. In *Stockdale* v. *Insurance Companies, supra,* 331, Mr. Justice Miller said of it: "The right of Congress to have imposed this tax by a new statute, although the measure of it·was governed by the income of the past year, cannot be doubted. . . . no one doubted the validity of the tax or attempted to resist it." The Act of February 24, 1919, c. 18, Tit. 2, 40 Stat. 1057, 1058–1088, which taxed incomes for the calendar year 1918, was applied without question as to its constitutionality in *United States* v. *Robbins,* 269 U. S. 315, and in other cases.

In the present case the returns of income received in 1933 were filed and became available in March, 1934. Wisconsin Stat. 1933, § 71.09 (4). The next succeeding session of the legislature at which tax legislation could be considered was in 1935, when the challenged statute was passed. By § 11, Art. IV; § 4, Art. V, of the Wisconsin constitution, and § 13.02 Wisconsin Statutes, 1935, regular sessions of the legislature are held in each odd-numbered year. Special sessions of the legislature may be held on call of the governor, at which no business can be transacted "except as shall be necessary to accomplish

the special purposes for which it was convened." A special session was called by the governor in 1934, but for purposes unrelated to taxation. Proclamations of the Governor of Wisconsin December 2, 28, 1933, January 18, 22, 30, 1934. Thus the legislature in 1935, at the first opportunity after the tax year in which the income was received, made its revision of the tax laws applicable to 1933 income, as did Congress in the Joint Resolution of July 4, 1864, commented on in *Stockdale* v. *Insurance Companies, supra.*

While the Supreme Court of Wisconsin thought that the present tax might "approach or reach the limit of permissible retroactivity," we cannot say that it exceeds it.

*Affirmed.*

MR. JUSTICE ROBERTS, dissenting.

The Constitution of Wisconsin, Article VIII, § 1, provides: "Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided." Pursuant to this grant, the State, since 1911,[1] has had a statute levying a general income tax on corporations and individuals at a graduated rate. The system, which is analogous to that with which we are familiar in the federal field, has, like the latter, been amended from time to time in detail. The law as it stood in 1933 is found in the 1933 edition of the Wisconsin statutes as chapter 71. The tax is imposed for annual periods. The gross income of a given year includes rents, dividends, wages, and salaries, profits from the transaction of business or sale of property and all other gains, profits, or income derived from any source except such as are specifically exempted. In ascertaining taxable income each tax-

---

[1] Laws of Wisconsin 1911, c. 658, p. 984.

payer is entitled to deduct from gross receipts wages, salaries, and other expenses of conducting a business, occupation, or profession, depreciation, also cost of property sold.  In addition each is permitted to deduct certain losses incurred within the year not compensated by insurance, interest paid on indebtedness, state and federal taxes, contributions to the State or its subdivisions or to charitable objects and amounts paid to an unemployment reserve.[2]  Pensions are exempted, and a specified amount may be deducted from the tax, when ascertained, as a personal exemption.[3]  Dividends (with exceptions not material) received from certain corporations filing income tax returns under the law, and paying income tax to the State, are deductible from gross income.[4]  We were told at the bar that this deduction had been authorized for many years prior to 1933.

The appellant, a resident of Wisconsin, on or about March 15, 1934, as by law required, made a return of his income for 1933 showing his gross income and took deductions for interest paid, for losses on the sale of securities, for business expenses, for charitable contributions, and for dividends received from certain corporations, with the result that no net taxable income remained. Without the deduction of the dividends his net income would have been $2,221.39.

When the Wisconsin legislature met in its regular biennial session in January 1935 it was confronted by a need for additional revenue to meet the State's obligations.  The condition is referred to as an emergency because the need for additional funds grew out of the then current relief load, but the emergency was no different than if the State had found itself short of funds for the

---

[2] § 71.04.
[3] § 71.05.
[4] § 71.04(4).

payment of official salaries. As the Supreme Court of Wisconsin has said: "Expense for relief of the unemployed is on no different footing than any other governmental expense."[5] And it goes without saying that an emergency does not create power but is merely the occasion for the exercise of existing powers in conformity to constitutional principles.[6]

What then did the legislature do to meet the demand for public revenue? It adopted a statute effective March 27, 1935.[7] By § 2 this Act laid an income tax additional to and separate from the general income tax at a graduated rate on the income of all individuals, for the year 1934, which was to be "assessed, collected, and paid in the same manner, upon the same income and subject to the same regulations," as provided "by law for the assessment, collection and payment of the normal income tax," with certain variations. One of the variations was that no deduction was to be allowed for those corporate dividends which were deductible under subsection (4) of § 71.04 of the general law.

Section 3 imposed an additional tax on transfers of property made up to July 1, 1937. Section 4 placed additional license fees for the year 1934 on telephone companies. Section 5 imposed an additional license fee for 1934 upon electric, gas and similar utility companies.

Section 6 imposed on the 1933 dividends, which had been deductible under the general law, a graduated tax of one per cent. on the first two thousand dollars of net dividend income, three per cent. on the next $3,000, and seven per cent. on all above $5,000. Net dividend income is defined as gross dividend income less $750. The tax

---

[5] *Scobie* v. *Tax Commission*, 225 Wis. 529, 538; 275 N. W. 531.

[6] *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, 425, 436; *Wilson* v. *New*, 243 U. S. 332, 348.

[7] Laws of Wisconsin 1935, c. 15, p. 19.

is to be assessed, collected and paid in the same manner as the normal income tax for 1934. Under this section the appellant was required to make return and pay on some $12,000 of the dividends which he had been permitted to deduct from gross income in calculating and paying his income tax for 1933 and was assessed thereon $545.71, which he paid under protest and brought this action to recover.

The question is whether § 6 transgresses the prohibition of the Fourteenth Amendment. The Supreme Court of Wisconsin, although stating that "While the present tax may approach or reach the limit of permissible retroactivity, it does not exceed it," sustained the statute as against challenge under the equal protection and due process clauses of the amendment.[8] I think the statute is violative of the guarantees of equal protection and due process.

One must ignore the realities of the situation if he approaches a decision of the case in the light of the equal protection clause as if the statute under attack were prospective in operation; or, in the light of the due process clause, as if the statute were a revision of an existing general income tax system theretofore in force. The illegal discrimination and the arbitrary character of the Act condemn it under the equal protection clause not because it selects a particular class of citizens for the imposition of the tax but because, in so doing, it reaches back and singles out for a new and wholly different sort of income tax those few only to whom a specific deduction was allowed in the general computation of their taxable income for the year 1933. It will not do to examine the classifi-

---

[8] The judges who heard the cause were equally divided in opinion. Four justices of the Supreme Court voted to sustain the Act. The trial judge and three justices of the Supreme Court were of the opinion that it was unconstitutional.

cation as if it were the declaration of a new policy of taxation to be operative in the future. No more will it do to separate the retroactive feature of the law and consider it as if it were a mere amendment of a general income tax system as such applicable to all income of all taxpayers subject to the law as it stood at the date of the amendment. The reason for allowing the deduction is plain. As has been said in this court: "The purpose of the Legislature was solely to prevent double taxation by the State of Wisconsin, of the income received by individuals in the form of dividends." [9] The same thing may be said as to the reason for other allowable deductions, as, for instance, of taxes paid. Reasons of fairness and public policy moved the State to allow the permitted deductions from gross income.

It readily may be conceded that Wisconsin is, and always has been, free in the imposition of an income tax, for good and sufficient reason, to treat the recipients of dividends on a basis different from the recipients of other sorts of income. The State also was free to revoke, alter, and amend the provisions for deductions as its views of fairness and policy might dictate. This case presents no such situation. After the taxpayers had returned and paid their tax under the existing system and according to the long established public policy of the State, the State sought additional revenues. Instead of levying an exaction upon the citizens generally or certain classes of citizens, the State went back and sought to tax a small class of income tax payers by reason of the purely arbitrary and adventitious fact that they had been allowed a particular deduction in a past year. It chose as the base of the tax a part of the income of the taxpayer under the law as previously in force. The previously granted deduction was not withdrawn but, on the contrary, the income rep-

---

[9] *Miller* v. *Milwaukee*, 272 U. S. 713, 717.

resented by that deduction was picked out from all others, was classified by itself and taxed in a manner wholly unrelated to the income and the taxes of the recipient of these dividends under the general law under which he had computed and paid his tax. If the State was at liberty to do this it was equally free to tax at a new rate and upon a new scheme income of the taxpayers who in 1933 deducted losses sustained or those who deducted interest paid or taxes paid or charitable contributions made. It was equally at liberty to form a taxable class of those who were granted personal exemptions, to wrest out of their setting, as part of the general income of a taxpayer, rents received, royalties received, or professional income accrued in 1933 and to impose a special income tax on one or all of those items. As the trial judge well said:

"In the equitable distribution of taxation persons receiving dividends in the year 1933 should not be classified less favorably than persons receiving other kinds of income that year. For the purpose of taxation the income was not materially different than the following kinds: Salaries paid officers of private corporations; salaries paid to public officials; interest; rents; profit and income of all kinds received by individuals and corporations generally, unless some good reason appeared for some legislative exception.

"The statute is also discriminatory against the class of persons receiving dividends in the year 1933 when compared with other classes of persons when such other classes are assessed at all. It discriminates in being more drastic in limiting deductions for losses, expenses and exemptions. It is more drastic in the rapid increase of the graduated rate. For some reason one class only was selected to bear the entire burden of the emergency tax in question. This class was subjected to an unusually inequitable burden."

Decisions sustaining the power of a State prospectively to classify, to grant exemptions, or otherwise to inter-

relate the tax burdens of different classes of taxpayers are of no aid and lend no support to the present statute. In no case heretofore to which attention has been called have the courts sustained a law which after the fact reaches back two years and selects for a special form of income taxation at a new rate a group of the taxpayers who, in accordance with preëxisting law, had paid that share of the general income tax which the legislature had adjudged to be its equal and proportionate share of the burden of government. To attempt this was, in my judgment, arbitrary and discriminatory classification.

From what has been said I think it apparent that the retroactivity of the challenged statute taken alone is not the element which condemns it any more than the attempted classification alone would condemn it if the Act were prospective in operation. The cases relied upon to support the statute, viewed in its retroactive aspect, do not meet the present case. In one of the cited cases,— *United States* v. *Hudson,* 299 U. S. 498, 500,—earlier decisions were thus summarized: "As respects income tax statutes it long has been the practice of Congress to make them retroactive for relatively short periods so as to include profits from transactions consummated while the statute was in process of enactment, or within so much of the calendar year as preceded the enactment; and repeated decisions of this Court have recognized this practice and sustained it. . . ." That was a case which fell squarely within this statement of the scope of permissible retroactivity. All enactments sustained that amended the tax system of a prior year were continuations of that existing system, and the taxpayers had knowledge, before the expiration of the year of receipt of the income by which the tax was measured, that amendment of the system was under consideration. To this class belongs the provision of the Wisconsin Act of 1935 imposing an additional tax on income received in 1934. This feature of the Act is

not here under attack. A very different course was adopted with respect to the income of 1933. For that year the statute imposed a special income tax on a class selected because the law in force when they paid their taxes had permitted them to deduct certain items, and ignored all others to whom similar deductions had been granted. Thus the whole scheme of the general income tax was unbalanced and a peculiar and specific burden laid upon a selected few who had theretofore been relieved of the unjust burden of double taxation. What was said in *Milliken* v. *United States,* 283 U. S. 15, 21, is peculiarly apposite to the facts here disclosed. There, referring to earlier decisions, condemning, under the due process clause, retroactive taxes, it was stated: "In both the point was stressed, as the basis of decision, that the nature and amount of the tax burden imposed could not have been understood and foreseen by the taxpayer at the time of the particular voluntary act which was made the occasion of the tax." Here the nature and amount of this special and peculiar tax could not have been understood and foreseen when the petitioner paid his 1933 income tax.

It is to be remembered that the Act in question is not a curative statute for the collection of taxes assessed in a prior year and uncollected [10] nor one intended to make available taxes which, by reason of illegality in their imposition, were not paid in the year in which they were assessed.[11] The Act is not a remedial measure to confirm or ratify a doubtful administrative interpretation of prior legislation.[12] It does not lay an excise or a privilege measured by the income of a prior year,[13] nor is it a statute to settle doubts as to whether an earlier taxing Act had expired by limitation.[14]

---

[10] *Florida Central & P. R. Co.* v. *Reynolds,* 183 U. S. 471.

[11] *Citizens National Bank* v. *Kentucky,* 217 U. S. 443.

[12] *Hecht* v. *Malley,* 265 U. S. 144.

[13] *Flint* v. *Stone Tracy Co.,* 220 U. S. 107.

[14] *Stockdale* v. *Insurance Companies,* 20 Wall. 323.

It was suggested at the bar that the exaction is a property tax and bad as such because retroactively imposed. The reply was that retroactive property taxes have been upheld. The cases cited do not touch the validity of an *ad valorem* property tax retroactively imposed. Some of them involved special assessments for benefits assessed after the completion of the improvement.[15] Another cited to the proposition dealt with an excise for the use, for pleasure, of foreign built yachts either owned or chartered by the user for more than six months during the taxable year. The exaction was held an excise on the privilege of use and not a tax upon ownership, and, moreover, the tax was not retroactive in operation but was assessed upon the taxpayer at a date during which the taxpayer's use of the yacht continued.[16] Still another dealt with a curative act passed to reach property illegally assessed.[17] But whether viewed as a property or an income tax the exaction is bad. Most, if not all, the States have long maintained the policy of exempting places of religious worship from annual tax levies. Will it be contended that if the State were now to impose a tax on the value of such exempt property for some past year, the action would not be an arbitrary taking of property as well as a hostile discrimination?

If, as this court has repeatedly said, an income tax is an equitable method of distributing the necessary burdens of government, certainly no such discrimination as is evidenced by the challenged Act can properly fall within the description. The Act evidences purposeful and arbitrary discrimination and thus violates the guarantee of equal protection.

MR. JUSTICE McREYNOLDS and MR. JUSTICE BUTLER join in this opinion.

---

[15] *Seattle* v. *Kelleher*, 195 U. S. 351; *Wagner* v. *Baltimore*, 239 U. S. 207.

[16] *Billings* v. *United States*, 232 U. S. 261.

[17] *Citizens National Bank* v. *Kentucky, supra.*