Ignacio Díaz Luzunaris, Petitioner, *v.* Tax Court
. of Puerto Rico et al., Respondents.

No. 5.   Argued June 19, 1944.—Decided November 21, 1944.

*Erasto Arjona Siaca* for petitioner. *Jesús A. González, Acting Attorney General, and M. Velázquez Flores, and A. D. Marchand Paz, Deputy Attorneys General,* for the respondent Treasurer.

Mr. Justice Todd, Jr., delivered the opinion of the court.

From a lease rental of $16,407 payable every year to the petitioner Ignacio Díaz Luzunaris, by the agricultural firm Wirshing & Co., *S. en C.,* of Ponce, by virtue of a leasehold of certain rural properties located in Santa Isabel, said petitioner assigned the sum of $15,000 for a number of years, as follows: (*a*) to the minor child Margarita Luciano, by a public deed executed on May 13, 1940, and with authorization of the District Court of Ponce, the sum of $5,000, for each of the years 1941, 1942, 1943, and 1944, conditioned upon the minor waiving, as she did, all right which she, as legatee, had or might have in an inheritance in which the petitioner was an interested party; (*b*) to the Banco de Ponce, by public deed executed on April 5, 1940, the sum of $10,000, for each of the years 1941, 1942, 1943, 1944, 1945, 1946, and 1947, the total amount as payment of a debt owed by the petitioner

prior to the date of the assignment. On June 30, 1941, and on June 30, 1942, the lessee Wirshing & Co., *S. en C.,* paid the sums assigned to Margarita Luciano and to the Banco de Ponce. However, when making the corresponding payment for the year 1943, said lessee, alleging that it felt bound to act thus by express mandate of Act No. 29 of December 7, 1942 (Spec. Sess. Laws, p. 160), as. amended by Act No. 62 of May 10 of 1943, (Laws of 1943, p. 146) and Act No. 175 of May 15, 1943 (Laws of 1943, p. 630) (acts creating the so-called Victory Tax), retained, at the source, the sum of $820.36 from the lease rental; that is, 5 per cent computed by Wirshing & Co., *S. en C.,* on the total rental of $16,407.12, because, in its opinion, the payments made to Margarita Luciano and to the Banco de Ponce constituted taxable income to the petitioner under the provisions of said Act.

Both the Treasurer of Puerto Rico and the Tax Court have upheld the action of Wirshing & Co. In order to review the decision rendered by said court we issued the writ herein.

The sole question to be determined is whether the lease rentals paid by Wirshing & Co., *S. en C.,* to the minor and to the bank constituted an income of the petitioner and, as such, subject to the Victory Tax. There is no merit in petitioner's allegation that since the assignments were made prior to the approval of the tax, they are not subject to the tax. If this were so, it would be quite easy for the taxpayers to evade all kinds of taxes, alleging prior transactions.

This case does not involve any question as to the retroactive application of the so-called Victory Tax to consummated transactions. In other words, not even by the language of the Act creating said tax, nor by the construction given to the same by the Treasurer of Puerto Rico and the Tax Court, either expressly or impliedly, has any attempt been made to apply the same retroactively. This is not a case of collecting said tax on payments of rentals already

made to the minor and to the bank prior to the enactment of said statute. The tax was retained by the lessee, Wirshing & Co., *S. en C.* for the year subsequent to the effectiveness of the Act. When the tax was deducted the statute creating it had already been enacted and the lease rentals were paid, taxable event, when the Act was already in force. Cf. *International Harvester Co.* v. *Wisconsin,* 322 U. S. 435, decided May 29, 1944, and *Luce & Co.* v. *Minimum Wage Board,* 62 P.R.R. 431, 448, *Ballester* v. *Court of Tax Appeals,* 61 P.R.R. 460, and *Welch* v. *Henry,* 305 U. S. 134, 147.

In *International Harvester Co., supra,* the appellants alleged that a tax could not be imposed on dividends of the corporation which had been declared and set aside during the years preceding the enactment of the taxing statute, but the court held that: "Since the taxable event, the distribution of the dividends paid from earnings, and the deduction of the tax from them occurred subsequent to the enactment of the taxing statute, no question of its retroactive application is involved."

Whether or not the imposition of the Victory Tax lies in this case depends on the nature of the transactions made and if, notwithstanding the assignments mentioned, the lease rentals should be considered as part of the gross income of the petitioner.

█ By its title as well as by its language, the purpose of the Act creating the Victory Tax is to levy an additional tax on income. See *Rivera* v. *District Court,* 62 P.R.R. 491. Our statute creating the income tax was adopted from the Federal statute on that subject and, therefore, we must apply the doctrines and rules laid down by the court and text-writers when construing that Federal legislation.

██ In the case of an assignment, the general rule is to the effect that if the taxpayer assigns the corpus, whether

real or personal, productive of the income, the latter is taxable to the assignee; but if he assigns the income itself, then this income is taxable to the assignor. See 2 Mertens, Law of Federal Income Taxation 623, § 18.02; *Blair* v. *Commissioner*, 300 U. S. 5; *Helvering* v. *Horst*, 311 U. S. 112, and Annotation in 83 A.L.R. 88. We shall not enter into a discussion of the different aspects and exceptions which this rule has, as set forth by Mertens in his aforesaid work. However, it has been consistently applied to cases, like the one at bar, where the right to receive a rent or rental was assigned, without assigning any interest in or title to the property productive of such rent. As stated by Mertens at page 657, § 18.12, Real Estate and Rents Therefrom: "The general rules expressed in preceding sections are applicable to assignments of real estate or rents therefrom, and this class of property offers no special peculiarities requiring or justifying a departure from such general rules. Generally speaking, only a real transfer of the corpus or title to real estate, or of an interest therein, will assuredly render the transferee taxable on the subsequent rents therefrom."

In *Bing* v. *Bowers*, 22 F. (2d) 450, confirmed *per curiam* in 26 F. (2d) 1017, it was decided that an instrument creating a so-called annuity payable out of rents from real estate, granting and transferring to grantee certain sum out of rents, income, and profits from interest in property, held not to pass interest in property, or create rent charge or any ownership *pro tanto* of grantor's interest sufficient to relieve grantor from including such amount in determining gross income subject to taxation.[1]

To that same effect, in the case of *Ward* v. *Commissioner of Internal Revenue*, 58 F. (2d) 757, the Court for the Ninth

---

[1] Commenting on this decision, in 41 Harv. Law R. 675–6 it is stated that "This decision finds firm support in policy, since a contrary result would open the door to wholesale tax evasion." However, in the same opinion in the *Bowers* case, it is stated that the motive which the taxpayer might have had for acting is immaterial.

Circuit held, invoking, among others, *Bing* v. *Bowers, supra,* that when rentals are assigned without assigning the lease itself, the assigned rentals were taxed as income of the assignor.

Confirming and further widening the scope of the foregoing decisions, the Federal Supreme Court, in *Helvering* v. *Horst, supra,* where the sole question for decision was whether the gift by the donor of some interest coupons detached from the bonds delivered to the donee constituted taxable income to the donor, said at p. 116:

". . . If the taxpayer procures payment directly to his creditors of the items of interest or earnings due him, (citing authorities) . . . he does not escape taxation because he did not actually receive the money. (Citing authorities.)

"Underlying the reasoning in these cases is the thought that income is 'realized' by the assignor because he, who owns or controls the source of the income, also controls the disposition of that which he could have received himself and diverts the payment from himself to others as the means of procuring the satisfaction of his wants. The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them. (Citation.)

"\*        \*        \*        \*        \*        \*        \*

"The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment, and hence the realization, of the income by him who exercises it.

"Although the donor here, by the transfer of the coupons, has precluded any possibility of his collecting them himself, he has nevertheless, by his act, procured payment of the interest as a valuable gift to a member of his family. Such a use of his economic gain, the right to receive income, to procure a satisfaction which can be obtained only by the expenditure of money or property, would seem to be the enjoyment of the income whether the satisfaction is the purchase of goods at the corner grocery, the payment of his debt there, or such nonmaterial satisfactions as may

result from the payment of a campaign or community chest contribution, or a gift to his favorite son. Even though he never receives the money, he derives money's worth from the disposition of the coupons which he has used as money . . . in the procuring of a satisfaction which is procurable only by the expenditure of money. . .''

Intimately related to the rule or doctrine under discussion, although distinguishable in its principles, is the rule mentioned in the cited cases to the effect that when the taxpayer assigns part of his income with the purpose of paying his debts, said income shall be considered as still belonging to the assignor. Such is the case herein. When the petitioner assigned the rentals which he should have received from Wirshing & Co., S. en C., to the bank and to the minor in order to pay them an outstanding debt, he enriched himself annually in an amount in proportion to the reduction of his debt. The assignment of said rentals was made by the petitioner in order to pay two debts which he owed, one for $60,000 to the Bank and another for $25,000 to pay the legacy left by petitioner's father to a minor. Can it be maintained that if the petitioner had received the rentals directly and with them paid the debts, said rentals would not have constituted part of his gross income? Evidently not. The fact that petitioner imposed on Wirshing & Co., S. en C., the obligation of making payment in his name did not change the situation. The properties producing the rentals still belong to the petitioner and if said rentals are used to pay the creditors, they should be considered as deposited or assigned for his benefit, according to the definition of gross income contained in § 1 of the Act creating the Victory Tax to the effect that: ''By income shall be understood every sum of money . . . actually received by the taxpayer, or deposited or assigned in his favor or *for his benefit*.''

The writ issued must be quashed and the decision appealed from affirmed.