HENRY H. CROSS COMPANY *v.* COOK, COMMISSIONER OF REVENUES.

4-7682                                       188 S. W. 2d 497

Opinion delivered June 25, 1945.

*J. K. Mahony, H. S. Yocum, Emon A. Mahony* and *C. E. Wright,* for appellant.

*Herrn Northcutt,* for appellee.

McHANEY, J.   This is an action brought by appellant to recover from appellee as Commissioner of Revenues for the State of Arkansas the sum of $819.51 paid to the latter by the former as balance of or additional income tax due for 1942, under protest, as provided by Art. 7, § 32 of Act 118 of 1929, § 14054 of Pope's Digest.

Appellant filed its State of Arkansas income tax return for 1942 and therein deducted from its gross income the sum of $397,548.82 Federal income and excess profits taxes paid by it to the government for said year. In auditing the return so filed appellee refused to allow

the total deduction claimed in said return, but did allow the sum of $364,779.73, the difference being the sum of $32,769.09 which latter is the so-called "Federal Credit" or "Post-War Refund" allowed by § 780 (a), Internal Revenue Code. Appellant's excess profit taxes paid to the government for 1942 was the sum of $327,690.95, and under the provisions of said § 780 (a), (b), (c), (d) and (e), the Secretary of the Treasury by (a) is authorized and directed to establish a credit to the account of the taxpayer, under conditions therein set out, "of an amount equal to 10 per centum" of the excess profits tax imposed under the act for such taxable year. Under sub-section (b), it is provided that "Within three months after the payment of the excess profits tax—there shall be issued to and in the name of the taxpayer bonds of the United States" in the amount of 10 per cent. of the excess profits tax paid, "and the credit established under sub-section (a) for such taxable year is hereby made available for the purchase of such bonds." Under (c) such bonds shall be issued under the authority of the Second Liberty Bond Act, as amended, shall bear no interest, be non-negotiable, non-transferable, "on or before the date of the cessation of hostilities in the present war," but otherwise thereafter. The bonds shall mature "on the last day of that calendar year, beginning after the date of cessation of hostilities in the present war," which is reflected in an appended table. Sub-section (d) provides: "The proceeds of any such bond upon redemption shall not be included in gross income." Sub-section (e) defines the term "cessation of hostilities."

The question for determination is whether said sum of $32,769.09, the post-War refund, paid by appellant to the government under the provisions of § 780, I. R. C., for the year 1942, shall be allowed as a deductible item of taxes. If so, appellant should prevail and the decree of the chancery court be reversed. If not, it should lose and the decree be affirmed, since the court dismissed appellant's complaint for want of equity.

We think the Commissioner properly assessed and collected the additional tax and that the chancery court

properly so held. We are cited to no case directly in point and our own investigation has found no such case.

By the express terms of the cited federal statute, the Secretary of the Treasury is authorized and directed to establish a credit to appellant's account of the sum of $32,769.09, which we assume he did, and within three months after paying its excess profits tax, bonds of the United States shall be issued to it for said credit. While it is true that such bonds shall bear no interest, and are not negotiable or transferable while the war continues, they are nevertheless valuable assets, and appellant so regards them, since, in its balance sheet as of December 31, 1942, it carries them as an asset at par, listed as "Post-War Refund, $32,769.09," with other assets in the total sum of $1,277,368.33, and which augments to this extent its surplus account in the total sum of $318,081.48. Also, in its income tax return to this state for 1942, in "Schedule A, Reconciliation of Net Income and Analysis of Surplus," it lists the same item under the head of "additions."

While it is true that our State Income Tax Act, § 14036, Pope's Digest, provides that "There shall be allowed as deductions . . . taxes paid or accrued within the income year imposed by authority of the United States . . · ," the question is what was the net amount of tax paid to the United States? It paid to the collector the full amount now claimed by it, but it immediately became entitled to the credit and received the credit by operation of law, and within three months it was entitled to have issued to it government bonds, in the amount of the credit, pledging the full faith and credit of the United States to their payment, in the manner provided in the Act of Congress above mentioned. We think the effect of the transaction was to reduce its tax payment or was a refund to appellant of the amount of the credit in the sum stated, which reduced the amount of its taxes paid to this extent. We do not think that the credit exists as an act of grace from the United States through said act and that it is a provision for a gift to the taxpayer, as appellant argues. It is more in the nature of a forced loan to the government to the extent of the credit. If

appellant has not received bonds, to which it is plainly entitled, it is not the fault of appellee. If appellant had overpaid the amount of its tax and had been refunded the amount of the overpayment in the taxable year, it certainly could not have claimed as deductible the amount of the refund. It is true that it has not received the controverted item in cash, but it has received it either in the form of a credit or in bonds and entered it on its books as an asset and carried it into its surplus account, available for company purposes.

We, therefore, conclude that the trial court correctly dismissed the complaint to recover the sum assessed against and paid by it.

Affirmed.

McFADDIN, J., dissenting. The question in this case is whether the sum of $32,769.09 paid by the appellant to the United States Government as a part of its federal corporation excess profits tax for the calendar year of 1942 may be claimed as a deduction by the appellant on its state income tax return for the calendar year 1942.

The Arkansas income tax law (§ 14036, Pope's Digest) provides:

"In computing net income there shall be allowed as deductions:

. . . . .

"(c) Taxes paid or accrued within the income year, imposed by the authority of the United States . . ."

It is not disputed—in fact, it is admitted—that appellant actually paid the United States Government the $32,769.09 here involved. This was certainly paid as a tax imposed by the United States, because it was paid under the Excess Profits Tax Act of the United States of 1940, as found in 26 U.S.C.A. (Internal Revenue Code), §§ 710-761. (This is § 201 of the Revenue Act of 1940, called the Excess Profits Tax Act of 1940, and is act of October 8, 1940, Chapter 757, § 201, as amended. See 54 U. S. Statutes at Large 975.)

To overcome this argument, the majority—as I see it—advances three propositions; and I think each proposition fails to afford an adequate answer; as I will now attempt to demonstrate:

1. The majority says that this $32,769.09 was not paid to the United States as a tax, because, under the Postwar Refund of Excess Profits Tax Act, *infra,* the money will eventually come back to the taxpayer. The fact that the money will come back to the taxpayer two years after the end of the Japanese war does not prevent it from being a tax paid in 1942. The appellant paid the tax to the United States under the provisions of the Federal Revenue Act of 1940. The provision allowing the postwar refund may be found in 26 U.S.C.A. (Internal Revenue Code), §§ 780-3. This is § 250 of the Revenue Act of 1942, which is entirely separate from the excess profits act under which the $32,769.09 was paid. The Postwar Refund of Excess Profits Tax Act is an act of October 21, 1942, Chapter 619, § 250, 57 U. S. Statutes at Large, 936. The fact that the United States under the said act is to issue a non-negotiable, non-interest bearing certificate to the appellant, redeemable two years after the end of the Japanese war, does not alter the fact that the taxpayer in 1942 paid the federal government the $32,769.09. It was paid in 1942, and is entitled to. be deducted as a tax paid that year. Until the refund comes from the federal government, two years after the end of the Japanese war, the taxpayer is in the meantime without his money; and it is stipulated in this case that the taxpayer has not received any refund bond under the Postwar Refund of Excess Profits Tax Act.

2. The majority says that the $32,769.09 is not entitled to be claimed as a tax paid in 1942, because § (d) of the Postwar Refund of Excess Profits Tax Act, *supra,* provides:

"The proceeds of any such bond paid to the taxpayer upon redemption shall not be included in gross income."

That language means that for federal income tax purposes, the proceeds of the postwar refund bond shall not be considered as income when the taxpayer cashes the bond; but that provision does not mean that it will not be income for purposes of state income tax; because the Arkansas state income tax law defines income, in § 14031 of Pope's Digest, to include:

"The words 'gross income' include gains, profits . . . ; and income derived from any source whatever."

When this $32,769.09 comes back to the taxpayer on the cashing of the federal bond, it will be income under the plain wording of the Arkansas income tax statute. That the State may adopt its own reasonable definition of "income" seems too clear to necessitate elaboration. In *Welch* v. *Henry,* 305 U. S. 134, 59 S. Ct. 121, 83 L. Ed. 87, 118 A. L. R. 1142, the Supreme Court of the United States, in upholding a Wisconsin income tax law which imposed a retroactive tax on corporate dividends, said:

"Any classification of taxation is permissible which has reasonable relation to a legitimate end of governmental action. . . .

"The equal protection clause does not preclude the legislature from changing its mind in making an otherwise permissible choice of subjects of taxation. . . .

"Possible differences in tax burdens, not shown to be substantial, or which are based on discrimination not shown to be arbitrary or capricious, do not fall within the constitutional prohibition. . . ."

3. The majority says even if the $32,769.09 was a tax paid in 1942, it was also *income to the taxpayer* in 1942, because of the entry in the books of the appellant to the effect that appellant had such a claim for postwar refund. The majority is holding that this amount—actually paid to the federal government in 1942—is *income* to the corporation for 1942, because the federal government has promised to pay back this amount to the taxpayer, without interest, two years after the close of the

Japanese war, and because the taxpayer has made a notation to that effect on its books! Mere bookkeeping entries do not alter the fact that the appellant has paid this money because of a federal tax. Before a sum may be properly deemed to be income so that an income tax may be levied thereon, certainly the taxpayer should have and hold this sum, and have domination and control of it, and spend it and invest it in any way that seems desirable. In the case at bar the appellant did not, during the taxable year of 1942, have this $32,769.09. The taxpayer could not use it to expand its business, or to pay dividends. The taxpayer will not have this money until a future date not now capable of being definitely stated. All that the taxpayer has now is the right to receive a non-interest bearing obligation of the United States, due two years after the close of the Japanese war. We have no yardstick to determine the proper rate of interest discount, because we have no way of knowing when the taxpayer will be able to reduce this credit to current funds. The fact that the taxpayer has in its bookkeeping set up this fund to show it as an asset does not change the basic facts. A bird in the bush cannot be converted into a bird in the hand merely by accounting methods.

In short, the arguments of the majority do not overcome the fact that the $32,769.09 here involved was paid to the federal government under the provision of a tax law imposed by the United States. The appellant, as the taxpayer, is entitled to deduct this amount from its state income tax return for the year 1942 by the plain wording of § 14036 of Pope's Digest.

For the reasons herein stated, I respectfully dissent from the majority opinion; and I am authorized to state that Mr. Justice FRANK G. SMITH and Mr. Justice ROBINS join in this dissent.