**SIBLEY, LINDSAY & CURR CO., A DIVISION OF ASSOCIATED DRY GOODS CORP., Plaintiff,**

v.

**BAKERY, CONFECTIONERY AND TOBACCO WORKERS INTERNATIONAL UNION OF AMERICA, AFL–CIO, and Bakery and Confectionery Union and Industry International Pension Fund, Defendants.**

No. CIV–82–555T.

United States District Court, W.D. New York.

March 15, 1983.

Harris, Beach, Wilcox, Rubin & Levey, Rochester, N.Y., for plaintiff.

Morgan, Lewis & Bockius, Washington, D.C., Albright, Yorks, Spadone & Anderson, Rochester, N.Y. (Donald Spadone, Rochester, N.Y., of counsel), for defendants.

## MEMORANDUM DECISION and ORDER

TELESCA, District Judge.

### A. Background

This is an action challenging the constitutional validity of certain withdrawal liability provisions of the Multiemployer Pension Plan Amendment Act of 1980 (hereinafter the "MPPAA"), 29 U.S.C. § 1381 *et seq.* The MPPAA is an amendment to the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1001 *et seq.* Presently before this Court are cross motions for summary judgment. Jurisdiction is conferred upon this Court by 29 U.S.C. § 1451. There being no genuine dispute between the parties as to the material facts presented in this case, judicial determination of the legal issues by means of summary judgment is appropriate.

### B. Facts

The relevant facts may be summarized as follows. Plaintiff, Sibley, Lindsay and Curr Co. (hereinafter "Sibley's") operates retail department stores in Rochester, New York. For many years prior to May 31, 1980, Sibley's operated a bakery at its Main Street, Rochester store. Defendant, Bakery and Confectionary Workers International Union of America (AFL–CIO) (hereinafter "Union") represented the bakery workers for purposes of collective bargaining. Since 1956 Sibley's has negotiated and entered into formal collective bargaining agreements with the Union. Pursuant to these labor agreements, Sibley's was contractually required to make certain monetary contributions to the Bakery and Confectionary Union and Industry International Pension Fund (hereinafter "Fund") on behalf of its bakery employees for the purpose of providing pension benefits to retired bakery employees.

On May 31, 1980 Sibley's closed its bakery and terminated the employment of forty-three bakery workers. According to Sibley's, the termination of its bakery operations was due to substantial financial losses attributable to the bakery. Prior to the closing of the bakery, Sibley's and the Union entered into a contractual agreement "governing their obligations ... with regard to the closing of the [bakery] operation". (Complaint, Exhibit A). Under the terms of the agreement, Sibley's provided vacation and severance benefits for the terminated employees. Under Paragraph Five of the Agreement, the parties expressly provided that the agreement constituted "the entire remaining obligations of both parties under their labor contract with regard to cessation of bakery production operations". *Id.*

At the time Sibley's terminated its bakery operation, ERISA imposed no financial liability upon Sibley's for cessation of its bakery business or its withdrawal from the Fund.[1] On September 26, 1980, four months *after* the closing of Sibley's bakery, the President signed into law the Multiemployer Pension Plan Act of 1980. (MPPAA) 29 U.S.C. § 1381 *et seq.* The MPPAA amended ERISA by, *inter alia,* creating and imposing substantial costs upon employers, such as Sibley's, who withdrew from multiemployer pension funds.[2] While the majority of the MPPAA became effective on September 26, 1980, the date President Carter signed the legislation, the withdrawal liability provisions of the Act were made effective as of April 29, 1980, approximately five months *prior* to the President's signature. Thus, Sibley's found itself subject to the withdrawal liability provisions of the MPPAA, notwithstanding the fact that it had closed its bakery and withdrew from the pension fund almost four months prior to the date the MPPAA was signed into law.

By letter dated May 11, 1982, the Fund notified Sibley's that it had computed Sibley's withdrawal liability under the MPPAA to be $315,927.00. An employer's withdrawal liability is its allocable share of the unvested benefits of the multiemployer fund as calculated by the Fund's trustees. 29 U.S.C. §§ 1381, 1391. The Fund provided Sibley's with the option of making payment in 59 consecutive installments, with interest. If an employer fails to make a monthly payment, the Plan Trustees are entitled to find the employer in default, and may declare the full amount of the employer's withdrawal liability to be due immedi-ately. 29 U.S.C. § 1399(c)(5). Since July, 1981, Sibley's, under protest, and solely to avoid the default provisions of the MPPAA, has paid monthly installments of $6,245.00 to the Fund.

On June 25, 1982, Sibley's filed the instant action challenging the constitutionality of the MPPAA's retroactive imposition of withdrawal liability. By order of this Court dated August 4, 1982, Sibley's motion for a preliminary injunction was denied, the Fund's motion for dismissal was denied, the Union's motion for dismissal was denied, and venue was found to be proper in the Western District of New York. Additionally, it was determined that the plaintiff's motion for a preliminary injunction would be converted into a motion for summary judgment. On September 1, 1982, the Fund and the Union filed cross-motions for summary judgment. The parties were given ample time to submit materials in support of their summary judgment motions and the issues raised in the complaint have been exhaustively researched and briefed by the parties.

C. *The Constitutionality of the MPPAA's Imposition of Retroactive Withdrawal Liability Under the Due Process Clause.*

█ It is well settled that legislative acts adjusting the burden and benefits of economic life carry with them a presumption of constitutionality. "[T]he burden is on the one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way". *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). The Court in *Turner Elkhorn* went on to

---

**1.** ERISA did impose a *contingent* obligation upon Sibley's to pay its proportionate share of the sums needed to cover vested benefits if the Fund were to terminate within five years of Sibley's withdrawal. If the Fund remained solvent for five years after Sibley's withdrawal, Sibley's would be relieved of all financial liability. 29 U.S.C. § 1365. Employers, such as Sibley's, could purchase insurance from the Pension Benefit Guaranty Corporation to protect themselves from the contingent liability if the Fund failed within five years. 29 U.S.C. § 1323.

**2.** The primary purpose of imposing substantial withdrawal liability was to reduce a perceived incentive for employers to withdraw early from financially troubled pension funds with the hope that the Fund would remain solvent for at least five years, thus relieving the employer of any contingent liability. *See* Footnote 1, *supra.* For an exhaustive analysis of the legislative history of the MPPAA see *Peick v. Pension Benefit Guaranty Corp.,* 539 F.Supp. 1025 (N.D. Ill.1982).

state, however, that legislation imposing retroactive burdens may be subject to greater judicial scrutiny than legislation with simply prospective application. "It does not follow . . . that what Congress can legislate prospectively, it can legislate retrospectively. The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justification for the latter may not suffice for the former." *Id.* at 16–17,[3] 96 S.Ct. at 2893.

■ In *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 592 F.2d 947 (7th Cir. 1979) the Seventh Circuit articulated a four factor test in determining whether retroactive legislation violates the due process clause of the Fifth Amendment.[4] The four factor analysis of *Nachman* has been utilized by other district courts in adjudicating the identical constitutional challenge to the MPPAA as is presented here.[5] I agree that the *Nachman* test is the proper approach and consequently adopt its use for consideration of the instant case.

■ Initially, it must be emphasized that judicial review of economic legislation under the Due Process Clause is limited to a determination as to whether the legislation represents a rational means to a legitimate end. *See Turner Elkhorn Mining,* 428 U.S. at 18–19, 96 S.Ct. at 2893–94. Under *Nachman,* the rationality of a retroactive legislature enactment is determined by a "comparison of the problem to be remedied with the nature and scope of the burden imposed to remedy that problem". *Nachman, supra,*

at 960. In making this comparison, the Seventh Circuit identified four factors to be used as guidelines in ascertaining the constitutionality of retroactive legislation. The four factors are:

(1) The reliance interest of the parties affected.

(2) Whether the private interest that is impaired is in an area previously subjected to regulatory control.

(3) The equities of imposing the legislative burden.

(4) The inclusion of statutory provisions designed to limit and moderate the impact of the burden.

1. *The Reliance Interests of the Parties* —Sibley's argues with great force that its reliance interest is substantial because it was entitled to rely on the existing state of the law when it closed the bakery and withdrew from the Fund. The Fund, on the other hand, argues at length that Sibley's should not have relied on existing law because they knew or should have known that Congress was going to enact legislation that would have a drastic retroactive effect on their withdrawal liability. "In view of the legislative history of the MPPAA and particularly the amount of congressional activity in the area prior to Sibley's withdrawal, the company should have been more knowledgeable about the prospects for mandatory withdrawal liability." (*Defendants Memorandum of Law,* pp. 21)

This Court declines to charge Sibley's with the responsibility of predicting congressional action. Forecasting congression-

---

**3.** *See also Adams Nursing Home v. Mathews,* 548 F.2d 1077 (1st Cir.1977) where the First Circuit stated: "[L]aws that unsettle settled rights can be harsh, and they deserve special scrutiny." *Id.* at 1080.

**4.** The *Nachman* case addressed the issue whether retroactive application of the *single employer* termination insurance provisions contained in ERISA violated the due process clause. While the Supreme Court did not expressly approve the *Nachman* four factor test in its review of the case, the Court in a footnote cited with apparent approval part of the analysis used by the lower court. (*See* 446 U.S. 359, 367, n. 12, 100 S.Ct. 1723, 1729, n. 12, 64

L.Ed.2d 354); *Shelter Framing,* 543 F.Supp. 1234 (D.C.Cal.1982).

**5.** Application of the *Nachman* test has yielded varying results however. *Compare Shelter Framing v. Carpenters Pension Trust for Southern California,* 543 F.Supp. 1234 (C.D.C.1982) (retroactive imposition of withdrawal liability violates due process clause) with *R.A. Gray and Co. v. Oregon-Washington Carpenters-Employers Pension Trust Fund,* 549 F.Supp. 531 (D.Or.1982) (no constitutional violation found in MPPAA's retroactive imposition of withdrawal liability). Both Sibley's and the Fund utilized the *Nachman* four-factor analysis in arguing their respective positions.

al action (or lack of action) is akin to forecasting the weather or the stock market: There are simply too many unpredictable variables involved. To adopt the view urged by the defendants would be to impose a burden upon Sibley's to be a clairvoyant—to predict that Congress would pass legislation four months hence. As Judge Hill stated in *Shelter Framing Corp. v. Carpenters Pension Trust,* 543 F.Supp. 1234 (D.C. Cal.1982): "No one should be held reasonably to anticipate a given type of congressional action on any subject. Outside of the tax area, *there is no authority that imposes on anyone the burden of predicting congressional action." Id.* at 1249 (emphasis added).

■ In measuring the reliance interest of a party, a court must also consider what that party would have done had it known that the legislative action was coming. *Welch v. Henry,* 305 U.S. 134, 146–147, 59 S.Ct. 121, 125–26, 83 L.Ed. 87 (1938); *Adams Nursing Home v. Mathews,* 548 F.2d 1077, 1081 (1st Cir.1977). Sibley's argues, and I agree, that the company had several options had it known that substantial withdrawal liability was going to be imposed. Sibley's could have chosen to continue operating the bakery, or sold the bakery's assets to a company which participated in the plan and intended to remain in business. Alternatively, Sibley's could have withdrawn partially from the Fund and reduced its withdrawal liability. 29 U.S.C. § 1386.

In contrast, the reliance interest of the other parties affected, the employees and the Fund, is slight, if not altogether speculative. Defendants argue that Sibley's bakery workers were relying on their employers continued participation in the multiemployer pension plan with the expectation that they will be paid pension benefits upon their retirement. However, it is the Fund that is responsible for maintaining pension benefit levels. As Judge Hill found in *Shelter Framing:* "The promises that were made to plaintiff's employees and upon which they may have relied were made . . . by the [Fund], and not by their particular employer." *Shelter Framing, supra,* at 1250.

Moreover, Sibley's withdrawal from the Fund did not terminate or render the Fund insolvent. The evidence presented, in fact, indicates that the Fund is in sound financial condition, notwithstanding Sibley's withdrawal. The Fund has submitted the affidavit of Dale B. Grant, a licensed actuary who prepares actuarial reports for the Fund, and who states that the Fund is in sound financial shape, having current assets of over 723 Million Dollars. (See Exhibit A of Defendants' motion in opposition to the granting of a preliminary injunction). In sum, I conclude that Sibley's reliance interest outweighs the reliance interest of the other parties affected by the withdrawal liability.

2. *Previous Regulation of the Area.* There is no question that pension plan termination is an area subject to heavy federal regulation. *Nachman, supra,* at 962; *R.A. Gray & Co. v. Oregon-Washington Carpenters Pension Trust Fund* 549 F.Supp. 531 (D.Or.1982). The *Nachman* decision indicates, however, that this factor is not so much concerned with the *existence* of previous regulation as it is with the *nature* and *scope* of that previous regulation. *Nachman, supra,* at 962. Thus, the "previous regulation" factor is closely related to the "reliance" factor just discussed; for the nature and scope of the previous regulation affects the expectations of the party upon whom the burden of retroactive legislation falls. "[F]or retroactive legislation to be valid, the new and more burdensome legislation must be closely akin in type and scope to the prior regulation." *Shelter Framing, supra,* at 1251.

In the instant case, the burdens imposed upon Sibley's under the MPPAA are not "closely akin" to the burdens imposed by ERISA. Withdrawal liability under the MPPAA is far more certain and far more substantial than the contingent liability provisions found in ERISA at the time Sibley's withdrew from the Fund. Again, I must agree with the reasoning of Judge Hill: "If [an employer] is in a regulated

field, he can anticipate some clarification and modification, but cannot foresee change of a most drastic type, especially when applied to a transaction already completed before the new legislation is enacted." *Shelter Framing, supra,* at 1251–52.

3. *The Equities of Imposing the Burdens of Retroactive Legislation.* Under the *Nachman* analysis, a look at the equities of imposing the retroactive withdrawal liability is relevant in determining whether the statute is rational or irrational. *Nachman, supra,* at 962.

I find that retroactive application of the withdrawal liability provisions of the MPPAA imposed an inordinate and unduly harsh burden upon employers, such as Sibley's who withdrew from a multiemployer pension fund during the five month retroactive period. (April 19, 1980—September 29, 1980). The law as it existed when Sibley's withdrew imposed only contingent liability upon withdrawing employers, strictly limited in terms of both time and circumstances. At the time Sibley's withdrew, it had previously negotiated an agreement with the Union purporting to set forth the entire remaining obligations owed to its employees as a result of the termination of its bakery operations. Employers who withdrew prior to the seemingly arbitrarily established April 19th retroactive date were subject to the far less burdensome contingent liability provisions of ERISA. Employers who remained in the Fund after the date the MPPAA was enacted had several options available to them that Sibley's, by reason of its untimely withdrawal, do not enjoy.[6] Accordingly, I agree with the conclusions reached by Judge Hill: "[P]laintiff, and those similarly situated, are being forced to bear a very disproportionate burden. They must bear the costs of a large problem which, so far as I can see, they had little if any role in creating." *Shelter Framing, supra,* at 1253.

4. *Statutory Provisions Limiting and Moderating the Burden.* Both Judge Hill in

Nachman, supra and Judge Redden in *R.A. Gray Co.* concluded that the MPPAA contained no significant features to moderate the imposition of large withdrawal liability. I concur with their findings and hold that this factor weighs against the constitutionality of the statute as applied to Sibley's.

## CONCLUSION

After careful consideration and application of the *Nachman* four factor test, I find that although it is an "extremely close call" (*see Peick v. Pension Ben. Guaranty Corp.,* 539 F.Supp. 1025, 1056 (N.D.Ill.1982)) retroactive application of the MPPAA violated Sibley's right to due process of the law as protected by the Fifth Amendment.[7] My holding is therefore limited: Under the facts and circumstances presented by this case and applied under the *Nachman* analysis, imposition of retroactive withdrawal liability upon Sibley's was not a rational means to achieve the legislative purpose. Accordingly, plaintiff's motion for summary judgment is granted and defendants' cross-motions for summary judgment are denied.

SO ORDERED.

---

**6.** See discussion of the "Reliance Interest" factor, *supra.*

**7.** I therefore need not address Sibley's other constitutional arguments challenging the retroactive impact of the MPPAA.