Ignacio Díaz Luzunaris, peticionario, *v.* Tribunal de Contribuciones de Puerto Rico y Tesorero de Puerto Rico, demandados.

Núm. 5.—*Sometido:* Junio 19, 1944. *Resuelto:* Noviembre 21, 1944.

*Erasto Arjona Siaca,* abogado del peticionario; *Hon. Procurador General Jesús A. González y M. Velázquez Flores y A. D. Marchand Paz, Procuradores Generales Auxiliares,* abogados del Tesorero demandado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

De un canon de arrendamiento de $16,407.12 a pagarse todos los años por la sociedad agrícola Wirshing & Co., S.

en C. de Ponce al peticionario Ignacio Díaz·Luzunaris por concepto de arriendo de fincas rústicas ubicadas en Santa Isabel, dicho peticionario cedió la suma de $15,000 durante cierto número de años, en la forma siguiente: (a) a la menor Margarita Luciano, por escritura pública otorgada el 13 de mayo de 1940 y con autorización de la Corte de Distrito de Ponce la suma de $5,000 por cada uno de los años 1941, 1942, 1943 y 1944, en consideración a que la menor renunciara, como renunció, a todo derecho que como legataria tuviera o pudiera tener en una herencia en la cual el peticionario era parte interesada; (b) al Banco de Ponce, por escritura pública otorgada el 5 de abril de 1940, la suma de $10,000 cada uno de los años 1941, 1942, 1943, 1944, 1945, 1946 y 1947, todo ello en pago de una deuda del peticionario preexistente a la fecha de la cesión. En 30 de junio de 1941 y 30 de junio de 1942 la arrendataria Wirshing & Co., S. en C., pagó las sumas cedidas a Margarita Luciano y al Banco de Ponce. Empero, al efectuar el pago correspondiente al año 1943 y alegando dicha arrendataria venir obligada a ello por mandato imperativo de la ley número 29 de diciembre 7, 1942 ((2) pág. 161), según fué enmendada por la número 62 de mayo 10 de 1943 ((1) pág. 147) y la número 175 de mayo 15 de 1943 ((1) pág. 631) (leyes estableciendo el llamado Impuesto de la Victoria), retuvo en el origen, la suma de $820.36 del canon de arrendamiento, o sea, el 5 por ciento computado por Wirshing & Co., S. en C. sobre el canon total de $16,407.12, por ser de opinión que los pagos a Margarita Luciano y al Banco de Ponce constituyen ingreso tributable del peticionario bajo las disposiciones de la citada ley.

Tanto el Tesorero de Puerto Rico como el Tribunal de Contribuciones han sostenido la actuación de Wirshing & Co. Para revisar la decisión de dicho tribunal expedimos el presente auto.

154

La única cuestión a resolver es si los cánones de arrendamiento pagados por Wirshing & Co., S. en C. a la menor y al Banco constituyen un ingreso del peticionario y como tal sujeto al Impuesto de la Victoria. Carece de méritos la contención del peticionario al efecto de que habiéndose efectuado las cesiones con anterioridad a la aprobación de dicho impuesto, el mismo no puede aplicársele. De ser eso así fácil sería a los contribuyentes eludir el pago de cualquier clase de tributos a base de transacciones previas.

No está envuelta en este caso cuestión alguna que implique una aplicación con carácter retroactivo del impuesto llamado de la Victoria a transacciones ya consumadas. En otras palabras, ni por los términos de la ley creando dicho impuesto ni por la interpretación que a la misma han dado el Tesorero de Puerto Rico y el Tribunal de Contribuciones, ni expresa ni implícitamente, se ha querido aplicar doctrina alguna de retroactividad. No se ha tratado de cobrar dicho impuesto sobre los pagos de los cánones de arrendamiento ya efectuados a la menor y al Banco con anterioridad a la fecha en que entró en vigor dicha ley. El impuesto ha sido retenido por la arrendataria, Wirshing & Co., S. en C., durante el año subsiguiente a la vigencia de la ley. Cuando la contribución se retuvo ya existía la ley creando el impuesto y los cánones de arrendamiento se pagaron (*taxable event*) estando ya en vigor dicha ley. *Cf. International Harvester Co.* v. *Wisconsin,* 322 U. S. 435, resuelto en mayo 29, 1944 y *Luce & Co.* v. *Junta de Salario Mínimo,* 62 D.P.R. 452, 470, *Ballester* v. *Tribunal de Apelación de Contribuciones,* 61 D. P.R. 474 y *Welch* v. *Henry,* 305 U. S. 134, 147.

En el caso de *International Harvester Co.,* supra, los apelantes sostenían que la contribución no podía imponerse sobre unos dividendos de la corporación que habían sido declarados y separados en años anteriores a la aprobación del estatuto, pero la corte resolvió que: "Como la distribución de los dividendos obtenidos de las ganancias, '*taxable event*'

y la deducción de la contribución sobre ellos ocurrió en fecha posterior a la aprobación de la ley que la imponía, no hay envuelta cuestión alguna sobre su aplicación retroactiva.''

Si procede o no la imposición del Impuesto de la Victoria en este caso depende de la naturaleza de las transacciones efectuadas y si, a pesar de las cesiones mencionadas, los cánones de arrendamiento deben considerarse o no como parte del ingreso bruto del peticionario.

■ Tanto por su título como por su texto el fin de la ley que crea el Impuesto de la Victoria, es imponer una contribución adicional sobre ingresos. Véase *Rivera* v. *Corte,* 62 D.P.R. 513. Nuestra ley estableciendo la contribución sobre ingresos es una adaptación de la ley federal sobre la materia y por tanto, debemos aplicar las doctrinas y reglas, así como la jurisprudencia que en la interpretación de dicha ley subsisten en la jurisprudencia y tratadistas sobre dicha legislación federal.

■ La regla general, en cuanto a una cesión, es al efecto de que si lo que el contribuyente cede es el *corpus,* bien real o personal, que produce el ingreso, éste es tributable al cesionario; pero si lo que cede es el ingreso en sí, éste es tributable al cedente. Véase 2 *Mertens, Law of Federal Income Taxation,* 623, Sec. 18.02; *Blair* v. *Commissioner,* 300 U.S. 5; *Helvering* v. *Horst,* 311 U.S. 112 y Monografía en 83 A.L.R. 88. No hemos de entrar a considerar los distintos aspectos y excepciones que esta regla tiene según se detallan por Mertens en la obra citada. Empero, ella ha sido aplicada consistentemente a casos, como el de autos, en los cuales se cedió el derecho de percibir una renta o canon de arrendamiento sin que se cediera interés o título alguno sobre la propiedad que producía tal ingreso. Como dice Mertens en la Sec. 18.12, Propiedad Real y Rentas derivadas de ella, página 657: ''Las reglas generales expresadas en secciones precedentes son aplicables a cesiones de propiedad real o las rentas que ella produce y esta clase de

propiedad no ofrece peculiaridades especiales que requieran o justifiquen que se descarten dichas reglas. En términos generales, solamente una cesión del corpus o título a la propiedad inmueble o de un interés en la misma, hace responsable al cesionario de las contribuciones sobre las rentas subsiguientes."

En el caso de *Bing* v. *Bowers*, 22 F. (2d) 450, confirmado *per curiam* en 26 F. (2d) 1017, se resolvió que una escritura por la cual se creó una llamada pensión o renta vitalicia proveniente de las rentas de propiedad inmueble, concediendo y cediendo al cesionario cierta suma de las rentas, ingreso y beneficios del interés en esta propiedad, no traspasó interés en la propiedad o creó carga o título *pro tanto* alguno del interés del dueño suficiente para relevar al cedente de incluir dicha suma como parte de su ingreso bruto sujeto a tributación.[1]

Al mismo efecto en el caso de *Ward* v. *Commissioner of Internal Revenue*, 58 F. (2d) 757, la corte del Noveno Circuito resolvió, citando entre otros casos el de *Bing* v. *Bowers,* supra, que cuando se ceden cánones de arrendamiento sin que al mismo tiempo se ceda el contrato de arrendamiento en sí, los cánones cedidos son tributables al cedente.

· Ratificando y ampliando jurisprudencia anterior, la Corte Suprema Nacional en el caso de *Helvering* v. *Horst,* supra, en el cual la única cuestión envuelta era si la donación hecha por el donante de unos cupones de intereses separados de unos bonos y entregados al donatario constituían ingresos tributables al donante, se expresó así a la página 116 y siguientes:

"Si el contribuyente obtiene que se pague directamente a sus acreedores con el producto de sus intereses o ingresos (citas) . . . él

[1] Comentando esta decisión en el 41 Harv. L. Rev. 675-6 dice que "Esta decisión encuentra firme sostén en la política contributiva (*policy*) pues sostener lo contrario abriría la puerta a una cxención al por mayor del pago de contribuciones." Empero, en la misma opinión en el caso de *Bowers*, se hace constar que el motivo que haya tenido el contribuyente para actuar es inmaterial.

no escapa de pagar la contribución por el hecho de que no recibiera en realidad el dinero. (Citas).

"El razonamiento fundamental de estos casos es la idea de que el ingreso es obtenido (*realized*) por el cedente porque él, que es dueño y controla la fuente de ingreso, también controla la disposición de aquello que él mismo pudo haber recibido y desvía el pago que habría de hacérsele a él hacia otros como medio de procurar la satisfacción de sus necesidades. El contribuyente ha disfrutado por igual los frutos de su trabajo o inversión y obtuvo la satisfacción de sus deseos, bien sea él el que cobre y use el ingreso para obtenerlos o bien disponga de su derecho a cobrarlos como medio de obtenerlos. (Cita).

"El poder de disponer de un ingreso equivale a ejercitar poder sobre el mismo. El ejercicio del poder de obtener que se pague el ingreso a otra persona es el disfrute y por tanto la realización del ingreso por aquel que ejerce dicho poder.

"Aunque el donante aquí, al transferir los cupones, ha impedido cualquier posibilidad de cobrarlos él mismo, por su actuación ha obtenido el pago de interés como un donativo valioso a un miembro de su familia. Tal uso de una ganancia económica, el derecho de recibir el ingreso, el obtener la satisfacción que sólo puede obtenerse gastando dinero o propiedad, parece ser el disfrute del ingreso aunque la satisfacción sea la compra de mercancías en la tienda de la esquina, el pago de su deuda allí o tal satisfacción no material como puede resultar del pago de una contribución de campaña o a un fondo común (*community chest*) o un regalo a su hijo favorito. Aún cuando él nunca recibe el dinero él deriva el valor del mismo al disponer de los cupones que él ha usado como dinero . . . al obtener una satisfacción que sólo puede obtener por medio de dinero . . ."

Intimamente relacionada con la regla o doctrina que discutimos, aunque distinguible en sus fundamentos, está aquella que se menciona en los casos citados al efecto de que cuando el contribuyente cede parte de sus ingresos con el fin de satisfacer sus deudas dichos ingresos continuarán considerándose como del cedente. Este es el caso de autos. El peticionario al ceder los cánones de arrendamiento, que debía de percibir de Wirshing & Co., S. en C., al Banco y a la menor para pagar a éstos una deuda con ellos contraída, se enriqueció anualmente en la suma proporcional en que sus

deudas eran reducidas. La cesión de dichos cánones fué hecha por el peticionario con el fin de satisfacer dos deudas que había contraído, una por $60,000 con el Banco de Ponce y otra de $25,000 para satisfacer un legado dejado por el padre del peticionario a una menor. ¿Podría sostenerse que si el peticionario hubiera percibido directamente los cánones y con ellos satisfecho esas deudas dejaban de constituir los mismos parte de su ingreso bruto? Claramente no. El imponer a Wirshing & Co., S. en C. la obligación de hacer el pago a nombre del peticionario no varió la situación. Las propiedades que producen los cánones continúan perteneciendo al peticionario y dichos cánones al ser satisfechos a sus acreedores deben considerarse como depositados o consignandos para su beneficio dentro de la definición de ingreso bruto contenida en el artículo 1 de la ley creando el Impuesto de la Victoria al efecto de que: "Se entenderá por ingreso bruto toda cantidad de dinero que . . . sea realmente recibida por el contribuyente o depositada o consignada a su favor o *para su beneficio.*"

*Se anula el auto expedido y se confirma la decisión recurrida.*