571 P.2d 822

Petition of Richard B. Addis and Shirley Lacy.

Richard B. ADDIS and Shirley Lacy, Appellants,

v.

SANTA FE COUNTY VALUATION PROTESTS BOARD, Appellee.

No. 3097.

Court of Appeals of New Mexico.

Oct. 25, 1977.

Linda S. Bloom, Albuquerque, for appellants.

Richard B. Addis, pro se and counsel to Shirley Lacy.

Toney Anaya, Atty. Gen., John C. Cook, Arthur Encinias, Property Tax Dept., Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

Laws 1977, ch. 361 (compiled as § 72–29–6.1, N.M.S.A.1953, 1976–77 Int. Supp.) limit the amount the value of certain property may be increased for property taxation purposes. This appeal involves the efforts of the property owners to have the limitation applied in valuing their property for the 1977 property tax year. We discuss: (1) various procedural matters; (2) the applicability of § 72–29–6.1, *supra*; and (3) costs and attorney fees.

The property involved is vacant, basically unimproved land in Hyde Park Estates in Santa Fe County. The 1976 valuation for lot G–10 and the east half of G–9 was $1,925.00; the 1977 valuation on the assessor's notice was $6,800.00. The 1976 valuation for lot G–8 and the west half of G–9 was $2,300.00; the 1977 valuation was $6,400.00. The 1977 valuation for each tract exceeded the percentage increase authorized by § 72–29–6.1, *supra*. The property owners protested the 1977 valuations. The VPB (Santa Fe County Valuation Protests Board) conducted an evidentiary hearing and ordered no change in the 1977 valuations. The property owners appealed directly to this Court. Section 72–31–28, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp. 1975).

*Procedural Matters*

Various procedural problems were brought to the attention of this Court by the joint motion of the Attorney General and two assistant attorneys general assigned to the PTD (Property Tax Department). The assistants were Mr. Cook and Mr. Encinias who are staff attorneys of the PTD. The motion was that the Attorney General, and the two assistants, be permitted to withdraw from representation of the appellee and that Mr. Cook and Mr. Encinias be substituted as counsel for the appellee. The net effect would be that the attorneys opposing the property owners would no longer bear the Attorney General label, but would bear the label of private counsel retained by the director of PTD. There would be no change in the position taken in the answer brief, there would be no change in the attorneys handling the appeal for the appellee. The motion is denied; it is directed only to form and not to substance.

The motion, and the hearing on the motion, raised the following procedural problems:

1. Who is the proper appellee when the property owners appeal the order of the VPB denying their protest? At the hearing before the VPB the adversary positions are clear; the property owner challenges and the county assessor defends the valuation of the property. The VPB is a quasi-judicial body. *First Nat. Bank v. Bernalillo Cty. Valuation*, 90 N.M. 110, 560 P.2d 174 (Ct.App.1977). Although the county assessor and the property owners are adversaries, "[a] protest hearing should not be viewed as an adversary proceeding with the Board arrayed against the taxpayer". Special concurring opinion of Judge Hernandez in *First Nat. Bank v. Bernalillo Cty. Valuation, supra*.

The county assessor may not appeal the order of the VPB; only the property owner may appeal. Section 72–31–28, *supra*. The property owner appeals when the order of the VPB favors his adversary. That adversary is the county assessor.

The basic issue in the property owner's appeal is the correctness of the assessor's valuation. This issue can be reached regardless of whether the assessor or the

VPB is the appellee. Is there a practical reason to be concerned with the proper appellee? Yes. The practical reason is that the appellee is the one to take a position concerning the validity of the appeal and the issues involved in the appeal.

2. There are differing positions in this appeal. The answer brief argues five contentions. Only one of these—contention three—was raised by the assessor in opposition to the property owners' protest. Contentions two and four were interjected into the hearing before the VPB by the attorney for the VPB. Contention one is not explicitly stated in the VPB's order but fairly comes within wording used in the order. Contention one, however, was never raised during the protest hearing; it appears for the first time after the hearing was concluded and at a time when the property owners had no opportunity to oppose this contention before the VPB. Contention five shows up for the first time in the answer brief. We are not concerned here with a due process problem, but with the question of identifying the property owners' opponent in a dispute over the valuation of property for tax purposes.

3. The dispute started between the assessor and the property owners. At the motion hearing, the assessor's attorney indicated that if free to do so, the assessor would take a position in the appeal contrary to that taken in the answer brief. The assessor's view was that under the statutory scheme, any position taken by the assessor could be overridden by the PTD. See §§ 72–28–4 and 72–28–6, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp. 1975). Under the statutory scheme, the PTD may control the position of the assessor in regard to the property owners' protest.

4. The view that the PTD is in a position to control the assessor's position as to the protest is consistent with the contention of Mr. Cook to this Court. The contention: that the VPB was an "independent" quasi-judicial body. Certainly it should be if the protest hearing is not to be an adversary proceeding between the VPB and the property owners.

5. The record requires the "independent" claim to be viewed skeptically. Mr. Encinias appeared as attorney for the VPB at the protest hearing. It was Mr. Encinias who interjected two contentions into the protest hearing. It was Mr. Encinias who assisted the VPB in drafting the order which raised a new contention after the hearing was closed. Yet, Mr. Encinias helped write the answer brief; he is a staff attorney for the PTD.

The statute provides that one member of the VPB is appointed by the director of the PTD and the member so appointed is to be the chairman. While the county commissioners appoint the other two members, the expenses of these two members are paid by the PTD. The PTD also pays all "actual and direct" expenses incurred in protest hearings. The statute infers that a protest hearing is not to be held unless the director's appointee is available. Section 72–31–25(A) and (E), and § 72–31–26, N.M.S.A. 1953 (Repl. Vol. 10, pt. 2, Supp. 1975).

In addition to being in a position to control the position taken by the assessor in connection with the protest, the record shows the PTD is involved with the so-called "independent" board that is to decide the protest. How can the VPB be acting independently when one member of the board and legal advice to the board comes from the PTD?

6. At the point where the protest hearing had been held and the VPB had entered its order denying the protest, the appearance is that PTD was the opponent of the property owners and had utilized two facades for this opposition—the assessor and the VPB. This appearance was demonstrated to be a reality during the motion hearing before this Court.

Initially, PTD took a very narrow view as to the applicability of § 72–29–6.1, *supra*; it proposed an order limiting the applicability to property that had been reappraised in 1976. The Attorney General refused to approve such an order. Thereafter the director of the PTD issued General Order No. 32. This general order instructed county assessors and county treasurers to give ef-

fect to § 72–29–6.1, *supra*, for the 1977 property tax year. However, this general order stated that it was issued pursuant to § 72–31–79(A), N.M.S.A. 1953 (Repl. Vol. 10, pt. 2, Supp. 1975). Mr. Cook's position at the motion hearing was that the general order did not apply to anyone who protested their 1977 property valuations, and that the failure to include protestants within the order was required by § 72–31–79(A), *supra*. However, there is nothing indicating § 72–31–79(A), *supra*, is applicable; Mr. Encinias represented that the property tax schedule had not yet been delivered to the Santa Fe County treasurer.

In making the above argument, Mr. Cook's position was clearly that of the PTD; there was no claim that the VPB had any position concerning the general order.

The Attorney General took the position that fairness required that the general order apply to protestants as well as non-protestants. The attorney for the assessor agreed with the Attorney General. It is the attorneys for the PTD who have adamantly sought to avoid the applicability of § 72–29–6.1, *supra*, where a property owner had protested his property valuation. Their opposition, as attorneys, represents the position of their employer—the PTD.

Our conclusions are:

■ A. The assessor is the proper appellee; the VPB is not. Compare § 72–13–39(B), N.M.S.A. 1953 (Repl. Vol. 10, pt. 2, Supp. 1975).

■ B. The PTD's position as to a protest may be asserted through the assessor whose position is largely controlled by the PTD.

■ C. If the VPB is to function as an independent quasi-judicial body, at a *minimum* it must obtain its legal guidance from someone other than the staff attorneys of the PTD. Compare *Varney v. Taylor*, 71 N.M. 444, 379 P.2d 84 (1963).

The above conclusions would dispose of this appeal in favor of the property owners, but would not dispose of the merits of this case. To avoid further delay, we answer

the merits in the next point. We answer all contentions, overlooking for this case the rule that only the contentions raised before the VPB are properly before this Court. See *Board of Education v. State Board of Education*, 79 N.M. 332, 443 P.2d 502 (Ct. App.1968).

*Applicability of § 72–29–6.1, supra*

The statute reads:

Section 1. A new Section 72–29–6.1 NMSA 1953 is enacted to read:

"72–29–6.1. LIMITATION ON INCREASES IN VALUATION OF CERTAIN PROPERTY FOR PROPERTY TAXATION PURPOSES.—

A. The limitation upon increases in valuation of property for property taxation purposes provided in Subsection B of this section shall apply only to property that is valued for property taxation purposes under Subsection B of Section 72–29–5 NMSA 1953 using the market value as determined by sales of comparable property method of valuation.

B. For property described in Subsection A of this section, its value for property taxation purposes in a property tax year shall not exceed the value determined for it in the previous property tax year by an amount equal to ten percent of the value determined for that previous property tax year.

C. The limitation on property value increase described in Subsection B of this section shall not apply to any increase in valuation from the preceding property tax year arising from:

(1) the addition of improvements, whether by declaration of the property owner or user or any other action including the action of a county assessor to add previously omitted improvements, or the remodeling or renovation of existing improvements;

(2) any rezoning or similar action of a governmental body that results in a change of permitted use of the property;

(3) division of the property into two or more parcels for any purpose; or

(4) any other factor resulting in an increase in value other than appreciation resulting from market conditions."

Section 2. APPLICABILITY.—The provisions of this act apply to the 1977 and subsequent property tax years.

Section 3. EMERGENCY.—It is necessary for the public peace, health and safety that this act take effect immediately.

This legislation was approved on April 8, 1977 and was in effect on that date. N.M. Const., Art. IV, § 23. By its terms it applies to the 1977 property tax year. The valuation for that year is involved in this appeal. PTD's contentions go to Paragraphs A, B, and C of Section 1 of the statute. Hereinafter we refer only to the paragraph.

■ 1. The property was valued for 1977 property taxes by using market value as determined by sales of comparable property. No claim is made that the 1977 valuation was not in accordance with Paragraph A. PTD's first contention is there is no showing of how the valuation was determined for 1976 property taxes. PTD claims the record must affirmatively show a valuation by the comparable sales method for both 1976 and 1977 before Paragraph A is applicable. PTD argues:

Subsection B of Section 72–29–6.1, *supra*, is clearly limited to property described in subsection A of Section 72–29–6.1. Subsection B refers to a property tax year and the previous property tax year, and the Board asserts that because of that reference subsection B clearly and unambiguously refers to the requirements of subsection A for both tax year 1976 and tax year 1977, in making subsection B applicable only to property that " . . . is valued for property taxation purposes under Subsection B of Section 72–29–5 NMSA 1953 using the market value as determined by sales of comparable property method of valuation . . . " for both tax year 1976 and tax year 1977.

We agree that the statutory language is clear; PTD has not read the statute properly. For property that is valued for 1977 taxes in accordance with Paragraph A, its value for 1977, under Paragraph B, "shall not exceed the value determined for it in the previous property tax year by an amount equal to ten percent of the value determined for that previous property tax year."

The statute says nothing about the method of valuing the property in the 1976 tax year. There is nothing requiring the valuation for the previous tax year to have been arrived at by the comparable sales method. If the property has been valued for the 1977 tax year in accordance with Paragraph A, the ten percent limitation in increased value is to be applied regardless of how the property was valued in the previous year.

■ 2. Paragraph B refers to the "value determined" for the property in the previous property tax year. PTD's second contention is there is no showing that the assessor determined a value for the property in 1976. It relies on the testimony of an appraiser employed by the assessor. The testimony is that the "last valuation" of the property had been in 1968. The attorney for the assessor informed the VPB that the assessor had simply carried the 1968 valuation forward each year from 1968 through 1976. PTD's position is that since no value was determined for the 1976 property tax year, there was no basis on which to apply the ten percent limitation.

Section 72–29–6(A) and (B), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp. 1975) provide the assessor shall determine values of property for property taxation purposes and the director of PTD shall provide for "regular evaluation of county assessors' valuation activities". PTD's position is that if neither it nor the assessor performed their duties, there is no basis for applying the ten percent limitation. We reject such a casuistic approach.

The assessor had the duty to value the property in this case. Section 72–31–20, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp. 1975) requires the assessor to "mail a notice to each property owner informing him of

the net taxable value of his property that has been valued for property taxation purposes by the assessor." Exhibits in evidence are notices from the assessor for 1976; these notices set forth the 1976 valuations stated in the second paragraph of this opinion. The only showing is that the assessor did determine a value for the 1976 property tax year; the fact that the value determined was the same value placed on the property in 1968 does not show an absence of value determination.

3. Paragraph C lists four exceptions from the limitation on increased valuation. VPB's order states: "The taxpayer failed to show that his property *fell outside* the exceptions stated in Section 72–29–6.1, *supra*." (Our emphasis.) This is incorrect. PTD concedes:

Taxpayers presented evidence that the increase in value did not arise from the addition of improvements . . . ; that the increase in value did not arise from remodeling or renovation . . . ; and that the increase in value did not arise from subdivision for any purpose . . . .

PTD's third contention is that the property owners failed to present evidence concerning exceptions two and four. These read:

(2) any rezoning or similar action of a governmental body that results in a change of permitted use of the property;

. . . . .

(4) any other factor resulting in an increase in value other than appreciation resulting from market conditions.

This third contention is the one issue raised by the attorney for the assessor. The exceptions were called to the attention of the VPB; it was advised: "I think the Board should inquire into whether an exception applies". An inquiry into exceptions one and three followed; no inquiries were made as to exceptions two and four.

There is nothing indicating exceptions two and four are in any way applicable. The evidence as to items two and four is sparse. The property is located in a subdivision, the plat for the subdivision was recorded in 1964, the property is subject to subdivision regulations which restrict use of the property. The "property factors" have not changed since the valuation in 1968. The property owners testified to no change in value; there has been no change in the property since 1968. Upon inquiry from the property owners, the appraiser stated that the increased valuation in 1977 was on the basis of comparable sales.

From the foregoing, the only permissible inference is that the increased valuation in 1977 was based solely on comparable sales and that the exceptions were inapplicable. If the property owners were required to show the inapplicability of the exceptions, the burden was met. In the next contention, we point out that the property owners had no such burden.

4. Section 72–31–6, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp. 1975) provides that the assessor's valuation is presumed to be correct. PTD's fourth contention is that the property owners failed to overcome the presumption. Related to this is PTD's claim under its first three contentions that the property owners had a burden of establishing that their property came within § 72–29–6.1, supra.

The effect of the presumption is to shift to the property owners the burden of going forward with evidence to prove the incorrectness of the assessor's valuation. *Petition of Kinscherff*, 89 N.M. 669, 556 P.2d 355 (Ct.App.1976). To meet that burden in this case, the property owners had the burden of showing that their property came within the ten percent limitation. However, the property owners did not have the burden of showing that their property "fell outside" the exceptions. The burden of showing the applicability of the exceptions is on the party relying on the exceptions; thus, the assessor's attorney advised inquiry into the exceptions.

The property owners had the burden of establishing their right to the ten percent limitation. *United Veterans Org. v. New Mexico Prop. App. Dept.*, 84 N.M. 114, 500 P.2d 199 (Ct.App.1972). Thus they had the

172

burden of showing that their property qualified for the limitation on value increases provided in Paragraphs A and B. They made such a showing, and this showing overcame the presumption that the assessor's valuation was correct.

The exceptions in Paragraph C came into play only after the property qualified under Paragraphs A and B; Paragraph C takes away what has been conferred under Paragraphs A and B. The party claiming that Paragraph C applied had the burden of proving the applicability of the exceptions. *State ex rel. Wilson v. Board of County Commissioners*, 62 N.M. 137, 306 P.2d 259 (1957); *Lujan v. Triangle Oil Co.*, 38 N.M. 543, 37 P.2d 797 (1934); see *Dillard v. New Mexico State Tax Commission*, 53 N.M. 12, 201 P.2d 345 (1948). Obviously the property owners did not claim that the exceptions applied. Any reliance on Paragraph C would be by the assessor, or the property owners' other adversaries in this case. Neither the assessor, the VPB nor the PTD showed that the exceptions applied.

5. PTD's fifth contention is that § 72–29–6.1, supra, is unconstitutional because it resulted in unequal treatment of property owners if the assessor had not performed his statutory duty to determine the value of property. The PTD points out that if property X had been valued by the comparable sales method in 1976 and property Y was valued at an old valuation, the ten percent limitation of § 72–29–6.1, supra, resulted in unequal treatment.

Our answer is that the PTD lacks standing to challenge the constitutionality of § 72–29–6.1, supra. *State ex rel. State Hwy. Com'n v. Hesselden Inv. Co.*, 84 N.M. 424, 504 P.2d 634 (1972); *State ex rel. Overton v. New Mexico State Tax Com'n*, 81 N.M. 28, 462 P.2d 613 (1969).

*Costs and Attorney Fees*

The property owners' protest should have been upheld and the ten percent limitation should have been applied in valuing the property for 1977 property taxes. The property owners will be accorded their statutory right to the limitation only

by virtue of their appeal to this Court. They have won their appeal, but they may not have won economically. There was a suggestion at the motion hearing that the cost of the transcript on appeal exceeds the amount of taxes involved. Ordinarily, the appellate winner recovers his transcript costs. However, in *New Mexico Bureau of Rev. v. Western Elec. Co.*, 89 N.M. 468, 553 P.2d 1275 (1976) the Supreme Court reversed this Court's award of transcript costs, holding that under the statute there involved, the Legislature intended the appealing party to bear the cost of the transcript. The statute involved in this case, § 72–31–28(B), supra, is similar to the statute involved in the *Western Electric* case. *New Mexico Bureau of Rev. v. Western Elec. Co.*, supra, is controlling and prohibits us from awarding the cost of the transcript to the property owners.

Rule 27 of the Appellate Rules for Civil Cases authorizes the award of attorney fees as costs only where permitted by law. See *Aboud v. Adams*, 84 N.M. 683, 507 P.2d 430 (1973). We know of no authority by which we can award attorney fees in this case.

The facts in this case demonstrate an intransigent attitude toward the property owners, an attitude based on the fact that the property owners protested the failure to apply § 72–29–6.1, supra, in evaluating their property for 1977 taxes. The unfairness of this position has been conceded by the Attorney General and the attorney for the assessor. In addition, the property owners have had to battle the PTD in all its facades—the PTD controlling the assessor, the PTD providing legal advice to the VPB, and finally the PTD openly. In these circumstances, the property owners can be accorded fair treatment only if attorney fees can be awarded for the services of their attorney on appeal. Unfortunately, we have no such authority.

We commend to the Legislature both items; the situation where the property

owners win their battle against the tax bureaucracy but (1) cannot recover the cost of the transcript utilized in that battle and (2) cannot recover attorney fees under a fact situation that would justify the award if the property owner is to be treated fairly.

The order of the VPB is reversed. The cause is remanded with directions to the PTD, the VPB and the assessor to apply the ten percent limitation of § 72–29–6.1, supra, in valuing the property involved in this appeal for 1977 property taxation purposes.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.