Reversed and remanded for further proceedings consistent with this opinion.

BERNARD KLEBANOW, PLAINTIFF-APPELLANT, v. SIDNEY GLASER, DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 7, 1978—Decided May 22, 1978.

Before Judges LORA, SEIDMAN and MILMED.

*Mr. Laurence Reich* argued the cause for appellant (*Messrs. Carpenter, Bennett & Morrissey,* attorneys; *Messrs. Greenbaum, Wolff & Ernst,* of the New York Bar, of counsel; *Mr. Reich* and *Mr. Laurence Vogel,* of the New York Bar, on the brief).

*Mr. Douglas G. Sanborn,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. William F. Hyland,* former Attorney General of New Jersey, *Mr. Stephen Skillman,* Assistant Attorney General and *Mr. Sanborn,* on the brief).

The opinion of the court was delivered by

MILMED, J. A. D. This appeal brings up for review the constitutionality of the retroactive feature of the Tax on Capital Gains and Other Unearned Income Act (the act), *L.* 1975, *c.* 172, as amended, *N. J. S. A.* 54:8B–1 *et seq.* The legislation, which has since been repealed,[1] was approved August 4, 1975 and by its terms took effect immediately and was made "applicable with respect to unearned income earned, received or constructively accrued or credited to the taxpayer on or after January 1, 1975." Section 25.

Plaintiff Bernard Klebanow lived in New York until November 1974, when he moved to Fort Lee in Bergen County. He asserts that in making this change of residence he "specifically relied upon the fact that in November, 1974, New Jersey did not impose any capital gains tax upon its residents." It appears that on January 8, 1975 he sold certain corporate stocks[2] held by him for a total of $12,000,000, realizing long-term capital gains thereon of $11,879,000. He maintains that he effected the sale of this stock "in specific reliance upon the non-existence of a New Jersey tax on capital gains and would not have sold that stock while a resident of the State of New Jersey if, at the time of the sale, a New Jersey capital gains tax had been in effect." He contends "that the retroactive nature of the tax, as applied to him in his unique facts and circumstances, is unconstitutional." He applied to the Director of the Division of Taxation (Director) for a refund of the $945,322 tax,[3] attributable to the January 8, 1975 sale,

---

[1]See *L.* 1976, *c.* 47, the New Jersey Gross Income Tax Act, *N. J. S. A.* 54A:1–1 *et seq.; N. J. S. A.* 54A:9–24. For inclusion of capital gains such as here involved under the new act, see *N. J. S. A.* 54A:5–1(c).

[2]Shares of HCA-Martin, Inc. and shares of Martin International Processing, N.V.

[3]The sum initially claimed was $972,547. However, this erroneously included the tax on plaintiff's "remaining 1975 income, consisting of interest and dividend income of $692,191."

which he paid to the State under protest, with interest on that sum from April 15, 1976, the due date of his tax return for the calendar year 1975. Upon his review of the matter the Director denied the claim for refund, holding that the sale "resulted in a taxable capital gain as contemplated by the Act." This appeal followed. We affirm.

Plaintiff argues, in essence, that the retroactive application of the act to his January 8, 1975 sale of stock infringes the Due Process Clause of the Fourteenth Amendment and "the related guarantees" of Art. I, par. 1, of our State Constitution of 1947. He does not claim that the tax imposed by the act is unconstitutional *per se*. He does, however, urge that its application to him, in the facts and circumstances of the case, "runs afoul of the Due Process Clause," basically because it imposed a new tax "upon voluntary acts where the taxpayer relied upon the existing statutory structure and was not forewarned of retroactivity." We find no merit in the contention.

When plaintiff sold his shares of stock on January 8, 1975 there were pending in the Legislature Assembly Bills 1883 and 1949, introduced July 8 and July 15, 1974, respectively, each of which, if adopted, would have imposed a tax "at the rate of 6% on all interest, dividends and gains from the sale or exchange of capital assets occurring after December 31, 1974, which have been earned, received in fact or constructively, accrued or credited to the taxpayer during his taxable year * * *," subject to certain exemptions. In the circumstances, plaintiff could not safely assume that the capital gains derived from the January 8, 1975 sale would not be reached by a tax measure subsequently enacted during the calendar year 1975. See *N. J. Const.* (1947), Art. IV, § I, ¶3.

When the Capital Gains and Other Unearned Income Tax Act was adopted in the summer of 1975, the State was in the throes of a fiscal crisis. The need for revenue to finance existing state programs was obvious. The tax measure

under review was accordingly included[4] in a "revenue package" designed to "finance" supplemental appropriations totalling $267,820,931 for the fiscal year which had begun on July 1, 1975. See the 1975–76 supplemental appropriations law, *L.* 1975, *c.* 173, approved August 4, 1975, and the Statement by Governor Brendan Byrne, issued the same day, regarding it and the revenue-raising package.[5]

Retroactive application of income tax legislation has been sustained on the basis of "the Government's need for adequate revenue and the fact that taxes are not a penalty or contractual obligation, but a means of spreading the costs of government to those who benefit from it." *Shanahan v. United States,* 447 *F.* 2d 1082, 1083 (10 Cir. 1971). And, in *Welch v. Henry,* 305 *U. S.* 134, 149–150, 59 *S. Ct.* 121, 127, 83 *L. Ed.* 87, 94–95 (1938), Justice Stone, in his opinion for a majority of the court, pointed out that

> The equitable distribution of the costs of government through the medium of an income tax is a delicate and difficult task. In its performance experience has shown the importance of reasonable opportunity for the legislative body, in the revision of tax laws, to distribute increased costs of government among its taxpayers in the light of present need for revenue and with knowledge of the sources

---

[4]Assembly Bill 3556, which, with amendments, became *L.* 1975, *c.* 172, was introduced in the General Assembly on July 16, 1975. It was passed in the Assembly on July 18 and in the Senate, with amendments, on July 21, 1975. The amendments were concurred in by the Assembly on July 25, 1975. As previously indicated, the measure was approved by the Governor on August 4, 1975.

[5]In the Statement the Governor noted, among other things, that the revenue-raising measures were "strictly a stopgap revenue program"; that "[t]his revenue package" did "nothing to meet" the State's commitment "to fund the new education formula under which the State is to assume a greater portion of the costs of operating our public schools"; that several of the bills in the package were "by design, temporary sources of revenue," and that "[t]hese temporary measures, together with other fiscal facts of life, increase the already inevitable need for substantial new revenues next year [1976]."

and amounts of the various classes of taxable income during the taxable period preceding revision. Without that opportunity accommodation of the legislative purpose to the need may be seriously obstructed if not defeated. We cannot say that the due process which the Constitution exacts denies that opportunity to legislatures; that it withholds from them, more than in the case of a prospective tax, authority to distribute the increased tax burden in the light of experience and in conformity with accepted notions of the requirements of equal protection; or that in view of well established legislative practice, both state and national, taxpayers can justly assert surprise or complain of arbitrary action in the retroactive apportionment of tax burdens to income at the first opportunity after knowledge of the nature and amount of the income is available. *And we think that the "recent transactions" to which this Court has declared a tax law may be retroactively applied,* Cooper v. United States, 280 *U. S.* 409, 411, 50 *S. Ct.* 164, 74 *L. Ed.* 516, 517, *must be taken to include the receipt of income during the year of the legislative session preceding that of its enactment.* [At 149–150, 59 *S. Ct.* at 127, 83 *L. Ed.* at 94–95; emphasis supplied]

See also, 71 *Am. Jur.* 2d, *State and Local Taxation,* § 460 at 764 (1973).

The basic argument advanced by plaintiff here is substantially the same as that put forth by the taxpayer in *Purvis v. United States,* 501 *F.* 2d 311 (9 Cir. 1974), *cert. den.,* 420 *U. S.* 947, 95 *S. Ct.* 1329, 43 *L. Ed.* 2d 425 (1975). In that case the Ninth Circuit Court of Appeals had before it the appeal of a taxpayer who sought to recover taxes paid by him under the Interest Equalization Tax Act of 1964.[6] In affirming the judgment entered for the Government in the District Court, Circuit Judge Merrill, speaking for a majority of the court, stated:

Taxpayer recognizes that modifications of income taxes have regularly been imposed retroactively, as discussed in Welch v. Henry, 305 *U. S.* 134, 59 *S. Ct.* 121, 83 *L. Ed.* 87 (1938). He insists, however, that the law is otherwise as to new and novel taxes upon transactions theretofore free from taxation. He relies upon decisions hold-

---

[6]*Pub. L.* 88–563, § 2(a), 78 *Stat.* 809, adding Chapter 41 to Subtitle D, Internal Revenue Code of 1954 (codified at 26 *U. S. C. A.,* §§ 4911 *et seq.*).

ing unconstitutional retroactive application of estate and gift taxes; Coolidge v. Long, 282 *U. S.* 582, 51 *S. Ct.* 306, 75 *L. Ed.* 562 (1931) ; Untermyer v. Anderson, 276 *U. S.* 440, 48 *S. Ct.* 353, 72 *L. Ed.* 645 (1928) ; Blodgett v. Holden, 275 *U. S.* 142, 48 *S. Ct.* 105, 72 *L. Ed.* 206 (1927) ; Nichols v. Coolidge, 274 *U. S.* 531, 47 *S. Ct.* 710, 71 *L. Ed.* 1184 (1927). Taxpayer concludes from these authorities and from the Court's discussion of the problem in Welch v. Henry, *supra,* that retroactivity can be sanctioned only if the tax is not imposed upon a voluntary act, or if the taxpayer is forewarned of retroactivity by the statute books themselves or by previous practices of Congress.

These contentions, with respect to this same tax, were advanced by a taxpayer and rejected by the Court of Claims in First National Bank in Dallas v. United States, 420 *F.* 2d 725, 190 *Ct. Cl.* 400, cert. denied, 398 *U. S.* 950, 90 *S. Ct.* 1868, 26 *L. Ed.* 2d 289 (1970). The court there stated that it could "perceive no such rigid standard of constitutionality in the decided cases." It further stated:

> "We are guided, rather, by the more flexible criteria delineated by the Supreme Court in Welch v. Henry, *supra,* 305 *U. S.* at page 147, 59 *S. Ct.* at 126:
>
>> * * * In each case it is necessary to consider the *nature of the tax* and the *circumstances in which it is laid* before it can be said that its retroactive application is *so harsh and oppressive* as to trangress the constitutional limitation. [Emphasis supplied (by the Court of Claims).]
>
> Accordingly, it is our view that where there is reasonable cause to believe or expect that a tax will be imposed upon a presently nontaxable transaction, the restrospective [*sic*] application of such tax does not constitute a denial of due process." 420 *F.* 2d at 730. We agree with that view. [501 *F.* 2d at 313]

See also, *Kellems v. Brown,* 163 *Conn.* 478, 313 *A.* 2d 53 (Sup. Ct. Err. 1972), app. dism., 409 *U. S.* 1099, 93 *S. Ct.* 911, 34 *L. Ed.* 2d 678 (1973).

In the totality of the circumstances we are satisfied that at the time plaintiff sold his shares of corporate stock he should have been aware that the Legislature was seriously considering some form of income tax which, if enacted, would probably conform to "the generally accepted practice of making a tax law applicable, beginning usually on January 1, to that part of the year which precedes its enactment," *Holmes v. McColgan,* 17 *Cal.* 2d 426, 110 *P.* 2d 428, 430 (Sup. Ct.), *cert.* den. 314 *U. S.* 636, 62 *S. Ct.* 69, 86

*L. Ed.* 510 (1941), and reach the capital gains which he realized from the sale. We find no merit in plaintiff's suggestion that the retroactive application of the act to these capital gains is "arbitrary and capricious" and constitutes "a deprivation of property without due process of law."

The determination of the Director of the Division of Taxation under review is affirmed.