625 P.2d 1214

Charles B. **HANSMAN** et ux., Robert W. Casey, et ux., Jacob and Charlotte Carian,

**and**

James F. **McClanahan** et ux., Appellants,

v.

**BERNALILLO COUNTY ASSESSOR,** Appellee.

Nos. 4337–4340.

Court of Appeals of New Mexico.

June 24, 1980.

Robert W. Casey, Carian & Casey, Albuquerque, for appellants.

Kenneth A. Hunt, Asst. County Atty., Albuquerque, for appellee.

## OPINION

WALTERS, Judge.

Petitioners protest the property tax valuation assessments against their respective properties for the 1979 tax year. The valuations were more than 10% in excess of the 1978 figures. Petitioners contend that the statutes in effect at the beginning of the tax year—the time when all property is to be valued for tax purposes, § 7–38–7 N.M. S.A. 1978—limited valuations to increases of not more than 10% over the previous year, and that the Valuation Protest Board improperly refused to reduce the assessed valuations. We examine the statutory evolution of the property tax provisions and the constitutional elements inherent in taxation laws to determine the merits of appellants' contentions.

In 1977 the Legislature enacted § 72–29–6.1 of the Valuation Article of the Property Tax Code. It was renumbered in the 1978 compilation of our statutes as § 7–36–17. The statute read:

A. The limitation upon increases in valuation of property for property taxation purposes provided in Subsection B of this section shall apply only to property that is valued for property taxation purposes under Subsection B of Section 7–36–15 N.M.S.A. 1978 using the market value as determined by sales of comparable property method of valuation.

B. For property described in Subsection A of this section, its value for property taxation purposes in a property tax year shall not exceed the value determined for it in the previous property tax year by an amount equal to ten percent of the value determined for that previous property tax year.

C. The limitations on property value increase described in Subsection B of this section shall not apply to any increase in valuation from the preceding property tax year arising from:

1. the addition of improvements, whether by declaration of the property owner or user or any other action including the action of a county assessor to add previously omitted improvements, or the remodeling or renovation of existing improvements;

2. any rezoning or similar action of a governmental body that results in a change of permitted use of the property;

3. division of the property into two or more parcels for any purpose; or

4. any other factor resulting in an increase in value other than appreciation resulting from market conditions.

In the 1979 Legislature, § 7-36-17, N.M.S.A. 1978, was repealed by § 7-37-7.1. The new Act was entitled "Additional limitations on property tax rates," and it established a new, complex tax limitation formula. The Act, being Ch. 268 of the Laws of 1979, provided in Section 4 for its applicability to "1979 and subsequent property tax years," and an emergency clause in Section 5 made it effective "immediately." It became law on April 4, 1979.

The Bernalillo County Assessor sent out its tax notices for the 1979 tax year after the effective date of § 7-37-7.1, contrary to the provisions of § 7-38-20, N.M.S.A. 1978, requiring notices to be mailed by April 1st of each year.

It appears that the 1979 valuations protested were reached by application of the methods prescribed in § 7-36-15, N.M.S.A. 1978, without regard to the 10% limitation of § 7-36-17B, and not as the result of any of the factors enumerated in § 7-36-17C. Petitioners contend the limitation of § 7-36-17B was in effect and governed any increase in value which might be made by the assessor, on the date at which valuation was to be determined—January 1, 1979. *See* § 7-38-7, N.M.S.A. 1978. The Protest Board argues that Section 4 of the 1979 Act making the law applicable to 1979 is rendered meaningless if the 10% limitation were not deemed inapplicable for the 1979 tax year; and furthermore, that an extension of time for mailing notices of assessment was granted pursuant to § 7-38-85, N.M.S.A. 1978, thus giving the assessor the right and opportunity to apply the "retroactive" effect of § 7-37-7.1 (Section 4) for the 1979 tax year.

▮ We do not dwell on petitioners' peripheral argument that the Act is unconstitutional because its title does not clearly indicate the Legislature's intention to make the repeal of § 7-36-17 retroactive. The Supreme Court said in 1964 that "the title need not be an index of everything in the act itself, but need only give notice of the *subject matter* of the legislation * * *." *Gallegos v. Wallace*, 74 N.M. 760, 763, 398 P.2d 982 (1964). The principle was repeated in *Re Estate of Welch*, 80 N.M. 448, 457 P.2d 380 (1969), when the court rejected appellant's argument that a statute was unconstitutional because a notice of hearing requirement did not appear in the title. The title of Ch. 268 reciting, in part, that it is an act

"RELATING TO TAXATION * * * REPEALING SECTION 7-36-17, NMSA 1978 * * * [and] DECLARING AN EMERGENCY"

sufficiently establishes its subject matter, and that is all that is necessary.

The principal issue to be determined is whether § 7-37-7.1 can apply to 1979 taxable valuations. We have no doubt the Legislature so intended; Section 4 clearly states it shall.

On the other hand, it is equally clear that had the assessor already complied with the duties imposed on him by §§ 7-38-7 and -20, he could not have valued protestants' properties for taxation purposes in an amount exceeding 10% above the *value* determined the previous tax year; and he would have so notified the taxpayers by April 1st. The effect of § 7-36-17, then, if applicable to 1979, would have been to require that all properties, if already valued, be re-evaluated for 1979 at the time the new law went into effect, and that new assessment notices thereafter be re-mailed to the taxpayers, if they had already been mailed. Such matters of detail, it has been

noted, are frequently omitted from specific mention in legislation, because "if these could not be supplied by implication the drafting of legislation would be an interminable process and the true intent of the legislature likely to be defeated." *Smull v. Delaney*, 175 Misc. 795, 25 N.Y.S.2d 387 (1941). In actuality, the time limits of neither § 7–38–7 nor § 7–38–20 was complied with by the Bernalillo County Assessor before § 7–36–17.1 became law.

We sympathize with the taxpayer's arguments because it seems unfair that a county assessor who was three months behind in his statutory duties appears to have assessed and collected taxes against the property of New Mexicans in his county valued on the unlimited basis, whereas other taxpayers in counties whose assessors performed their duties on time likely did not have their properties *re* valued and *re* assessed above the 10% limitation after the new law took effect. Those possible inequities are not shown by the record before us, however. And we have not been cited to any authority, nor have we found any, which holds that a statute which *de* limits the range for valuing properties for tax purposes can be invalidated because other statutes which direct the time and methods for carrying out the process of valuing and assessing taxes, have not been obeyed.

Indeed, in *Greene v. Esquibel*, 58 N.M. 429, 272 P.2d 330 (1954), property owners complained that fraud had been committed by the taxing authorities because assessment and delinquency notices had been sent to various incorrect addresses, and their predecessor had thus been prevented from knowing that the property would be (and subsequently was) sold at tax sale. The court rejected the argument, saying:

> That [duty to give notice] like various other duties enjoined by statute, can only be regarded as directory to the officer; the neglect to give a proper notice or failure to give any notice at all would not discharge the tax, or present a valid obstacle to the collection thereof.

\*    \*    \*    \*    \*    \*

> The requirement that the county treasurer [assessor] give written notice to each taxpayer of the amount of his tax adds nothing to the definite imposition of the tax and the equally definite imposition of a penalty to follow upon delinquency. This provision is directory, but not mandatory. It is intended for the benefit and convenience of the taxpayer, but certainly not for his relief or advantage.

■ There is an analogy between *Greene* and the matter now before us: If a taxpayer is liable for a tax properly assessed, it doesn't matter whether the valuation was done or the notices were mailed in timely fashion. Consequently, when property is evaluated in accordance with law, the taxpayer is liable for payment whether or not the evaluation is done on time, just so long as the value determined reflects the value as of January 1st of the tax year. *In re Kinscherff*, 89 N.M. 669, 556 P.2d 355 (Ct. App.1976); § 7–38–7, N.M.S.A. 1978. There is no evidence in this record that the protested valuations applied to any other date.

■ The taxpayers here urge us to read § 7–37–7.1 as establishing a taxing rate formula (which must be measured against the dollar amounts allowed under § 7–37–7B to assure that only the lower of the two rates be applied), which formula shall be effective for "the 1979 and subsequent tax years"; but that the repeal of § 7–36–17 should be effective only after April 4, 1979 because there is no additional language in Section 3 of the Act to make the repeal "effective on a certain date other than the date the bill was signed into law." We cannot so read Section 3. Section 4 is unambiguous and it states:

> The provisions of *this act* are applicable to the 1979 and subsequent tax years.

It does not exclude certain provisions of the Act and include only others. We are bound by the rule that courts are not free to construe unambiguous legislation; they may not read language into a statute that is not there, particularly if it makes sense as written. *State v. Elliott*, 89 N.M. 756, 557 P.2d 1105 (1977); *State ex rel. Barela v.*

*New Mexico State Bd. of Educ.*, 80 N.M. 220, 453 P.2d 583 (1969).

■ A retroactive statute, clearly intended by the Legislature to so operate, is permissible. In *Wilson v. New Mexico Lumber & Timber Co.*, 42 N.M. 438, 440, 81 P.2d 61 (1938), the Court noted that:

> The general rule is that statutes, except those dealing with remedial procedure, are to be construed as prospective rather than retrospective unless there is a clear legislative intention to the contrary.

In *Addis v. Santa Fe Co. Valuation Protests Board*, 91 N.M. 165, 571 P.2d 822 (Ct.App. 1977), we held that the repealed statute referred to in this case was effective for the tax year of 1977 even though the legislation was not approved until April 8, 1977, because the statute contained an Applicability section identical to Section 4, quoted above, except for the date of "1977" instead of "1979." We said, "By its terms it applies to the 1977 property tax year."

Although *Addis* was concerned with a statute operating retroactively to limit or reduce a taxpayer's liability, statutes which have the effect of increasing or imposing taxes from the happening of an event at a point prior to the enactment of the statute have been upheld with some frequency. *See*, e. g., *Welch v. Henry*, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938); *Milliken v. United States*, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809 (1931), and cases cited therein; *Klebanow v. Glaser*, 159 N.J.Super. 596, 388 A.2d 1015 (1978); *Pabst v. Comm'r of Taxes*, 136 Vt. 126, 388 A.2d 1181 (1978); *Garrett Freight Lines v. State Tax Comm.*, 103 Utah 390, 135 P.2d 523 (1943).

In *Atlantic Coast Line R. Co. v. Daughton*, 262 U.S. 413, 43 S.Ct. 620, 67 L.Ed. 1051 (1923), a statute enacted in March imposing a tax on income for the calendar year was not held not impermissibly retroactive. Mr. Justice Stone wrote, in *Welch v. Henry, supra* :

> Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the costs of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process, and to challenge the present tax *it is not enough* to point out that the taxable event, the receipt of the income, antedated the statute. [Our emphasis.]

305 U.S. at 146-147, 59 S.Ct. at 125.

*Welch, supra*, also established the guide for determining when a retroactive taxing scheme might be unconstitutional as a denial of due process. "In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation." *Id.* at 147, 59 S.Ct. at 126.

■ Taxpayers here have not shown any harshness or oppression greater than suffered by other taxpayers, nor resulting from an act they would have postponed had they anticipated the change in valuation authorized by the new statute. Property taxes retroactively applied are not open to the objection urged in gift tax cases, because the incidence of the property tax is not on the voluntary act of the taxpayer. *Welch v. Henry, supra*. Short of damaging their own properties, there is little these protestors could have done to alter the statutory comparable values of their own properties to keep them within a 10% limit of increase between the 1978 and 1979 taxable valuations. Recognizing that no taxpayer is immune from taxation, we perceive no options available to these taxpayers which they could have exercised had they been aware on January 1st that there would be a retroactive effect in the new law to be passed in April of that year, and which options they were denied as a result of the "retroactive" provision. *See* the discussion of this approach in *Pabst, supra*, at 388 A.2d 1187–1188. Therefore, if retroactive, the statute is not unconstitutional as a denial of due process.

There is also a substantial body of authority which holds that a taxation statute

such as the one under consideration is *not* retroactive and is not, therefore, to be analyzed in terms of the constitutional limitations of retroactivity. In *Katzenberg v. Comptroller of Treasury*, 263 Md. 189, 282 A.2d 465 (1971), the application of a 1967 tax law to installment payments received in 1967 and 1968 from 1962–1964 sales was held not retroactive. The court reasoned that the tax was aimed at the profits received after the statute's effective date rather than at the sale of assets preceding enactment. The Nebraska Supreme Court came to the same result in a case concerned with similar facts and a comparable tax statute. *Altsuler v. Peters*, 190 Neb. 113, 206 N.W.2d 570 (1973). Likewise, in *Tiedemann v. Johnson*, 316 A.2d 359 (Me.1974), a Maine income tax reaching installment payments received from a sale completed prior to the effective date of the tax law was held to be "wholly prospective," rather than impermissibly retroactive as argued by the taxpayers. *See also* cases collected in annotations at 109 A.L.R. 523 and 118 A.L.R. 1153.

The 1979 taxes assessed in the consolidated matters now before us were payable in two equal installments due on November 5, 1979 and April 5, 1980. Section 7–38–38, N.M.S.A.1978. Thus, like taxes computed in 1975 under a 1975 law, with reference to oil production in 1974, in *Belco Petroleum Corp. v. State Bd. of Equalization*, 587 P.2d 204 (Wyo.1978), we hold that the rate of taxation authorized by § 7–37–7.1 based on the January 1, 1979 *value* of protestants' properties, without regard to any 10% limitation in increase over the 1978 valuation, "imposes a present tax which is measured by an antecedent fact." *Id.* at 211. We agree with *Belco, supra,* that a taxpayer does not have a vested right in a tax rate for a previous year, even though the change in the tax rate is enacted in the current year.

The rationale of *Belco, supra,* that a statute is not retroactive simply because it draws on antecedent facts for its operation, is consistent with the decisions of our courts in *Lucero v. Board of Regents*, 91 N.M. 770, 581 P.2d 458 (1978), and *State v. Mears*, 79 N.M. 715, 449 P.2d 85 (Ct.App.1968). Chief Judge Spiess stated the rule in *Mears, supra,* at 715–716, when he said:

It is well settled that a statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to the enactment.

The claim of retroactivity is more apparent than real. The actual value of protestants' properties *existed* prior to April 4, 1979. Only the *valuation for tax purposes,* prior to April 4th, was limited. That limitation was removed by the 1979 Act, however; and the 1979 taxes, payable after passage of the Act, were to be measured by the *unlimited* valuation of the properties as of January 1st of the tax year. This is a clear instance of a statute acting prospectively on facts or conditions in existence prior to its enactment.

We hold the 1979 statute to be plain and unambiguous and, by its very words, not retroactive in fact or in application. Any tax increase resulting from it was applicable to 1979 taxes. The Valuation Protests Board properly upheld the taxes assessed against protestants for the 1979 tax year.

The decision is AFFIRMED.

WOOD, C. J., and ANDREWS, J., concur.